## JAMES WALSH

*v.*

## THE PEOPLE OF THE STATE OF ILLINOIS.

1. CRIMINAL LAW—*bribery.* At common law, bribery is a grave and serious offense against public justice; and the attempt or offer to bribe is likewise criminal, as tending to corrupt official integrity, and is indictable.

2. SAME—*misdemeanor defined.* Misdemeanors comprise all offenses lower than felonies which may be the subject of indictment. They are of two classes, such as are *mala in se*, or punishable at common law, and such as are *mala prohibita*, or penal by statute.

3. SAME—*misdemeanors at common law.* Whatever, under the first class, mischievously affects the person or property of another, or openly outrages decency, or disturbs public order, or is injurious to the public, or is a breach of official duty, when done corruptly, is the subject of indictment.

4. SAME—*offer to receive a bribe.* In this State, it is an indictable misdemeanor to propose to receive a bribe by an alderman of a city council, or by any public officer. It must be regarded as an incentive to offer one, and a solicitation to commit an offense. Inciting another to the commission of any indictable offense, though without success, is a misdemeanor.

5. SAME—*character of accused.* Where the defendant was convicted of the offense of offering to receive a bribe, upon the unsupported testimony of a single witness, who was impeached, and was shown to have been actuated by great personal hostility to the accused, it was *held*, that in such a case, involving so much doubt, the good character of the accused was entitled to great weight, and that the conviction could not be sustained.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. WILLIAM W. FARWELL, Judge, presiding.

Mr. JOHN VANARMAN, and Mr. EMERY A. STORRS, for the plaintiff in error.

Mr. CHARLES H. REED, State's Attorney, for the people.

Mr. JUSTICE THORNTON delivered the opinion of the Court:

The defendant below was an alderman of the common council of the city of Chicago. As such, he was indicted for a

proposal, made by himself, to receive a bribe, to influence his action in the discharge of his duties.

The indictment is, in form, an indictment at common law; and it is conceded that the statute has not created such an offense against an alderman. Our criminal code has made it an offense to propose, or agree to receive, a bribe, on the part of certain officers; but an alderman is not, either in terms or by construction, included amongst them. Rev. Stat. 1845, p. 167, sec. 87.

It is contended that the act charged does not fall within any of the common law definitions of bribery; that no precedent can be found for such an offense, and that, as propositions to receive bribes have probably often been made, and as no case can be found in which they were regarded as criminal, the conclusion must follow that the offense charged is no offense.

The weakness of the conclusion is in the assumption of a premise, which may or may not be true. This particular phase of depravity may never before have been exhibited; and if it had been, a change might be so suddenly made, by an acceptance of the offer and a concurrence of the parties, as to constitute the offense of bribery, which consists in the receiving any undue reward to incline the party to act contrary to the known rules of honesty and integrity.

But the character of a particular offense can not fairly be determined from the fact that an offense exactly analogous has not been described in the books. We must test the criminality of the act by known principles of law.

At common law, bribery is a grave and serious offense against public justice; and the attempt or offer to bribe is likewise criminal.

A promise of money to a corporator, to vote for a mayor of a corporation, was punishable at common law. *Rex* v. *Plympton*, 2 Lord Raym. 1377.

The attempt to bribe a privy counsellor, to procure an office, was an offense at common law. *Rex* v. *Vaughan*, 4

Burr. 2494. In that case, Lord MANSFIELD said: "Wherever it is a crime to *take*, it is a crime to *give*. They are reciprocal. And in many cases, especially in bribery at elections to parliament, the *attempt* is a crime. It is complete on *his* side who *offers* it."

Why is the mere unsuccessful attempt to bribe criminal? The officer refuses to take the offered reward, and his integrity is untouched—his conduct uninfluenced by it. The reason for the law is plain. The offer is a sore temptation to the weak or the depraved. It tends to corrupt, and, as the law abhors the least tendency to corruption, it punishes the act which is calculated to debase, and which may affect prejudicially the morals of the community.

The attempt to bribe is, then, at common law a misdemeanor; and the person making the offer is liable to indictment and punishment.

What are misdemeanors at common law? Wharton, in his work on criminal law, p. 74, says: "Misdemeanors comprise all offenses, lower than felonies, which may be the subject of indictment. They are divided into two classes: first, such as are *mala in se*, or penal at common law; and secondly, such as are *mala prohibita*, or penal by statute. Whatever, under the first class, mischievously affects the person or property of another, or openly outrages decency, or disturbs public order, or is injurious to public morals, or is a breach of official duty, when done corruptly, is the subject of indictment."

In the case of the *The King* v. *Higgins*, 2 East, 5, the defendant was indicted for soliciting and inciting a servant to steal his master's chattels. There was no proof of any overt act towards carrying the intent into execution, and it was argued, in behalf of the prisoner, that the solicitation was a mere fruitless, ineffectual temptation—a mere wish or desire.

It was held, by all the judges, that the soliciting was a misdemeanor, though the indictment contained no charge that the servant stole the goods, nor that any other act was done except the soliciting.

Separate opinions were delivered by all the judges.

Lord KENYON said the solicitation was an act, and it would be a slander upon the law to suppose that such an offense was not indictable.

GROSS, J. said an attempt to commit a misdemeanor was, in itself, a misdemeanor. The gist of the offense is the incitement.

• LAWRENCE, J. said: "All offenses of a public nature, that is, all such acts or attempts as tend to the prejudice of the community, are indictable;" and that the mere soliciting the servant to steal was an attempt or endeavor to commit a crime.

LE BLANC, J. said that the inciting of another, by whatever means it is attempted, is an act done; and if the act is done with a criminal intent, it is punishable by indictment.

An attempt to commit an offense, or to solicit its commission, is at common law punishable by indictment. 1 Haw. P. C. 55; Whar. Cr. Law, 78 and 872; 1 Russ. on Cr. 49.

While we are not disposed to concur with Wharton, to the full extent, in the language quoted, that every act which might be supposed, according to the stern ethics of some persons, to be injurious to the public morals, to be a misdemeanor, yet we are of opinion that it is a misdemeanor to propose to receive a bribe. It must be regarded as an inciting to offer one, and a solicitation to commit an offense. This, at common law, is a misdemeanor. Inciting another to the commission of any indictable offense, though without success, is a misdemeanor. 3 Chitty Cr. Law, 994; 1 Russ. on Cr. 49, Cartwright's case; Russ. and R. C. C. 107, note b; *Rex* v. *Higgins*, 2 East, *supra*.

As we have seen, the mere offer to bribe, though it may be rejected, is an offense; and the party who makes the offer is amenable to indictment and punishment. The offer amounts to no more than a proposal to give a bribe; it is but a solicitation to a person to take one. The distinction between an offer to bribe and a proposal to receive one, is exceedingly

nice. The difference is wholly ideal. If one man attempt to bribe an officer, and influence him, to his own degradation and to the detriment of the public, and fail in his purpose, is he more guilty than the officer, who is willing to make sale of his integrity, debase himself, and who solicits to be purchased, to induce a discharge of his duties? The prejudicial effects upon society are, at least, as great in the one case as in the other; the tendency to corruption is as potent; and when the officer makes the proposal, he is not only degraded, but the public service suffers thereby.

According to the well established principles of the common law, the proposal to receive the bribe was an act which tended to the prejudice of the community; greatly outraged public decency; was in the highest degree injurious to the public morals; was a gross breach of official duty, and must therefore be regarded as a misdemeanor, for which the party is liable to indictment.

It is an offense more serious and corrupting in its tendencies than an ineffectual attempt to bribe. In the one case, the officer spurns the temptation, and maintains his purity and integrity; in the other, he manifests a depravity and dishonesty existing in himself, which, when developed by the proposal to take a bribe, if done with a corrupt intent, should be punished; and it would be a slander upon the law to suppose that such conduct can not be checked, by appropriate punishment.

In holding that the act charged is indictable, we are not drifting into judicial legislation, but are merely applying old and well settled principles to a new state of facts.

We are compelled, however, to reverse, upon the evidence, and shall not therefore further allude to the law of the case, or to the errors assigned upon instructions given and refused.

The defendant was found guilty, upon the unsupported testimony of one Goggin; and it appears that there were two persons of the name of Walsh referred to by Goggin, in his numerous conversations · one was a member of the board of

education, and the other, the present defendant, was a member of the common council of Chicago.

After the date, as fixed by Goggin, of the proposal, on the part of the defendant, to receive a bribe, Goggin said to one Young that he had agreed to give $2000 to Walsh, but that he now demanded $4000. Young replied there are two persons of that name; "which one is it?" Goggin said: "It is Walsh of the board of education; the alderman is a gentleman."

Goggin complained to one Miller that the defendant had prevented him from selling his lot to the city, and said: "I will get a chance at him some of these days."

He also said to Donovan: "Walsh is my bitterest enemy, and I will do everything in my power to send him up."

To Cullerton: "I have nothing against any alderman but Jim Walsh; and, by ——, I will fix him, if swearing will do it."

To Gustave Busse: "All I want is Walsh—that d——d scoundrel; I want to go for him. If I can bring him to the penitentiary, I am going to do it."

To Fred. Busse: "There is only one man I want to go for—Walsh. If I can get on the stand, if I don't fix him, and get him in the penitentiary!"

Upon cross-examination, Goggin, denied all hostility, and any expressions of hostility, toward the defendant; and he also denied the conversation testified to by Young.

We might make further reference to the evidence, but enough has been cited to show a deep feeling of hostility, on the part of the witness, toward the defendant, and a determination to have him convicted, if false swearing could do it. We must credit the numerous witnesses who contradict the prosecutor. He is therefore impeached, and, to a great extent, rendered unworthy of belief. He can not have sworn to the truth, if we believe the impeaching witness; or if upon the trial he testified truly, then he made wilfully false statements, to divers persons, before the trial.

Not only is there a reasonable doubt created as to the guilt of the accused, but the mind is forced to the conclusion that the prosecution was the result of personal animosity, and was carried on for the gratification of malicious feeling. There is no safety to the good, or virtuous, or innocent, if convictions can be had upon the testimony presented in this record.

In a case involved in so much doubt, the good character of the accused, abundantly proved, was entitled to great weight. A large number of witnesses testified that his general reputation for honesty and integrity was good.

Under all the circumstances, it is almost incredible that a verdict of guilty was obtained.

The judgment is reversed and the cause remanded.

*Judgment reversed.*

Mr. Justice BREESE: I concur in reversing the judgment, but do not concur in all the views presented in this opinion.

Mr. JUSTICE SCOTT: I concur in reversing the judgment in this case, but dissent from the views expressed in the opinion of the majority of the court.

There is no statute in this State which defines the offense for which the plaintiff in error was indicted and convicted. It is a common law indictment, and it was sought to charge him with having, in his official capacity, offered to receive a bribe.

The indictment alleges that the plaintiff in error, "on the 1st day of December, 1871, then a member of the common council of the city of Chicago, to-wit, an alderman, did then and there unlawfully, wickedly, corruptly, and contrary to his duty as such alderman, propose to receive, as a bribe, of and from William Goggin, a large sum of money, to-wit, the sum of $4000, to induce him, the said Walsh, as such alderman, to use his influence with favor, as such alderman, to induce and secure the purchase by said common council, of said William Goggin, for said city of Chicago, for the place whereon to erect a public school house," certain real estate, it

being the duty of said common council to purchase real estate for said city whereon to erect school houses, contrary to law, etc.

The only question of any importance presented by the record is, whether there is any such offense known to and indictable at common law as an *offer* by any officer to receive a bribe for his influence, in his official capacity, to induce his favorable action, for corrupt and improper purposes.

Bribery, at common law, is defined to be "the receiving or offering any undue reward by or to any person whatever whose ordinary profession or business relates to the administration of public justice, in order to influence his behavior in office, and incline him to act contrary to the known rules of honesty and integrity." But in a more extended and enlarged sense, it may be committed by any person in an official situation who shall corruptly use the power and interest of his place for rewards or promises, and by any person who shall give or offer or take a reward for offices of a public nature. 3 Greenleaf, sec. 71; 1 Russell on Crimes, 154; 4 Bl. Com. 139.

In England the offense of taking bribes was punished in inferior officers with fine and imprisonment, and in those who offer a bribe, though not taken, the same. 4 Bl. Com. 140.

It is said that the law abhors the least tendency to corruption, and upon the principle that an attempt to commit a misdemeanor is itself a misdemeanor. Attempts to bribe public officers, though unsuccessful, have been held to be criminal. The object was to preserve purity in official conduct, and in the administration of justice; and the tendency of the bribe being to corrupt official conduct, and pervert justice, he who received and he who offered the bribe were alike punished.

In no definition of bribery that I have seen does it include a mere offer on the part of an officer to be himself bribed. No reference has been made to any elementary work, or to any adjudged case that gives such a definition, and I am persuaded that no such authority can be found.

Bribery is punished on the ground that it tends to produce official misconduct or to corrupt the administration of justice. It is difficult to understand how a mere offer on the part of an officer to receive a bribe could come within the reason of the rule. A party who would express a willingness to receive a bribe for his official influence is necessarily corrupt, but no extrinsic motive is brought to bear on him by a mere offer on his part not accepted other than his own evil inclinations which previously existed, and hence an offer to receive a bribe does not come within any definition of bribery.

There is no such offense defined by our statute or the common law, as an offer on the part of an alderman to receive a bribe, as alleged, and the motion to quash the indictment ought to have been allowed, and because it was not sustained I am of opinion that the judgment ought to be reversed.

I am unable to comprehend how a party may be indicted for an alleged crime wholly unknown to the law, and on the trial be convicted of immoral conduct, even if it be admitted that such conduct tends to produce official misconduct, and punished as bribery was punished at common law. It would certainly constitute an anomalous proceeding in criminal jurisprudence.

Nearly, if not all of the misdemeanors defined by common law writers, which it has been thought necessary to be punished, have been defined in our criminal code, and provision made for the summary punishment before justices of the peace, and by indictment, and in my judgment it is against the policy of our laws to permit indictments for such offenses not defined by statute.*

---

*BUSSE v. THE PEOPLE.

Per CURIAM: This indictment is for the same offense and in all respects like the one in *Walsh* v. *The People.*

The views of the majority of the court, on all the questions raised, have been fully stated in the opinion in that case, to which reference is made.

The evidence in the record has been carefully considered, and it is the opinion of the court, all the members concurring, that the verdict in this case is not supported by the evidence.

The judgment is reversed and the cause remanded.

*Judgment reversed.*