## JACOB RATH v. THE STATE.

*No. 1158.   Decided October 23rd, 1895.*

**1.   Offer to Bribe an Officer—Indictment.**

It is not essential to the sufficiency of an indictment for offering to bribe an officer, under provision of Art. 120, Penal Code, that the indictment should allege that, the accused offered to bribe said officer to do or omit to do an act in violation of his duty as an officer. The offense is complete whenever the offer to bribe is made for the purpose, and with intent to influence, in a certain way the action of the officer in his official capacity, and this too whether it would be the duty of said officer to so act or not.

**2.—Same.**

Under the latter portion of said Art. 120, if the indictment seeks to charge an offer to bribe an officer to do any act or thing in violation of his duty as an officer, then it is proper that the indictment should set out the matters or acts which it was proposed the officer should do in violation of his duty as said officer.

**3.   Refused Instructions.**

It is not error to refuse requested instructions which do not present law applicable to the case.

**4.   Evidence—Written Instrument, and Parol Evidence.**

Where an offer to bribe an officer was in writing, and the instrument had been offered in evidence by the State. Held: That this did not preclude the State from proving subsequent parol offers by the accused to bribe said officer, which were different from the one contained in the written instrument, since all the propositions went equally to establish the charge of an offer to bribe, and the rule that a written instrument cannot be contradicted by parol does not apply in such a case.

**5. Record Evidence as to Election of Officer.**

On a trial for offering to bribe an officer, it is not necessary to introduce record evidence as to the election and qualification of the officer.

**6. Offer to Bribe—Suggestion of Made by the Officer.**

On a trial for offering to bribe an officer, it is immaterial that the suggestion of the offer to bribe came from the officer, for the fact that the latter might have been willing to be bribed, would be no justification or excuse in defendant's offering the bribe.

APPEAL from the District Court of Childress. Tried below before Hon. G. A. Brown.

This appeal is from a conviction for offering to bribe an officer, the penalty assessed being a term of two years' imprisonment in the penitentiary.

The indictment is as follows: "In the name and by the authority of the State of Texas: The grand jury for the County of Childress and State of Texas, duly organized as such at the May term, A. D. 1895, of the District Court for said Childress County, Texas, upon their oaths in said court present, that Jacob Rath, on or about the 29th day of April, one thousand eight hundred and ninety-three, in the County of Childress, and State of Texas, did then and there unlawfully, wilfully and corruptly offer to bribe G. W. Cook, the said G. W. Cook then being a county officer, to-wit: a county commissioner in and for Motley County, Texas, duly elected, qualified, and acting as such county commissioner. That said offer to bribe so made by said Jacob Rath to the said G. W. Cook, commissioner as aforesaid, consisted substantially as follows, to-wit: The said Jacob Rath did then and there unlawfully, wilfully and corruptly offered to give and pay to him, the said G. W. Cook, commissioner as aforesaid, the sum of one thousand dollars in money if the said G. W. Cook, commissioner as aforesaid, would, as such commissioner, vote in said Commissioners' Court of said Motley County for and in favor of building a new stone court house in and for Motley County, Texas, and in case the said Commissioners' Court of said Motley County, Texas, should vote and decide to build a new stone court house in and for Motley County, Texas, then that the said G. W. Cook, commissioner as aforesaid, would vote as a member of said court to grant and give to him, the said Jacob Rath, and another, to-wit: J. T. Cornett, the contract of building and erecting the said stone court house in and for said Motley County, Texas. That the said Jacob Rath then and there knew that the said G. W. Cook was then a county commissioner in and for said Motley County, Texas. That the question and the matter of the building of a stone court house in and for Motley County was to be considered and acted upon on the second Monday in May, 1893, in said Motley County, Texas, by the Commissioners' Court of said County of Motley, and at which said time the said G. W. Cook would be a member of and entitled to a vote in said court, and that the said Jacob Rath then and there knew that said G. W. Cook would be a member of said court on said date; that said matter would be voted and acted upon, and that the offer to bribe the said G. W. Cook, commissioner as aforesaid, so made by the said Jacob Rath, was then and

there made with the intent to unlawfully influence the opinion and bias the judgment and decision of him, the said G. W. Cook, commissioner as aforesaid, in violation of his duty as such commissioner in the matter of voting for the building and erection of a new stone court house in and for Motley County, Texas, and in voting in said court as to whom said contract of building said court house should be awarded, and which said matters the said Commissioners' Court of said Motley County had jurisdiction, and of which said county the said G. W. Cook, on the said second Monday in May, 1893, would be a duly elected, qualified and acting member of said court, and which said offer to bribe was made with the intent to unlawfully, wilfully and corruptly influence the said G. W. Cook, commissioner as aforesaid, to vote for the proposition of building a new stone court house in and for Motley County, Texas, and to vote for the proposition of granting the contract to build said court house to the said Jacob Rath and the said J. T. Cornett, whereby the said Jacob Rath did then and there unlawfully, wilfully and corruptly offer to bribe the said G. W. Cook, commissioner as aforesaid, against the peace and dignity of the State."

A motion was made to quash the indictment, because it "is vague, uncertain, and charges no offense against the laws of the State of Texas," and special exceptions to said indictment were as follows: Said indictment fails to allege or set forth any facts that would show, that if the said G. W. Cook had voted for the building of the court house in Motley County; and, second, if he had voted in said Commissioners' Court to have given or let the contract of building said court house to this defendant and J. T. Cornett, that such voting would have been in violation of said G. W. Cook's official duty; and, that defendant would have been favored or gained any unfair or unlawful advantage of said county or any one else by such voting. No. 2.—Defendant further excepting to said indictment says that it fails to allege that any question or matter was pending before said Commissioners' Court at the time of the alleged offer to bribe was committed as to building a new stone court house or any kind of court house before the Hon. Commissioners' Court of Motley County, Texas, or that such question or matter would ever come before them thereafter by law, it only alleges that defendant knew that such question at some future time would come before said court, etc. Further excepting to said indictment, defendant says that the official acts or things sought by said bribe, to induce the acts set out in said indictment, to be done by the said G. W. Cook, are all indefinite and uncertain, and, in the indefinite future, no time being alleged at which official acts of the said G. W. Cook was to be done or performed in violation of his official duty.

These motions and exceptions were overruled.

The only evidence for the State was the testimony of G. W. Cook, which is as follows, to-wit: "My name is G. W. Cook; am sheriff of Motley County, Texas. During the year 1893, I was county commissioner of precinct No. 1, of Motley County, Texas. Was elected com-

missioner at the election in November, 1892; am acquainted with the defendant, Jacob Rath. The first time I met him was on the 24th day of March, 1893; he came to where I lived in Motley County, —— miles from the town of Matador; he came to where I was at work in my vineyard, where I was putting up posts to train vines on; he introduced himself, and asked me if the Commissioners' Court were going to build a stone court house in Motley County; I told him I did not know; he then asked me if I was not one of the commissioners; I told him I was, and also told him the matter of building the court house had been postponed and would come before the commissioners at the next May term, but that I could not tell what the Commissioners' Court would do. He said he was a contractor and builder, and would like to get the contract to build the court house if it was to be built. I told him the commissioners had not decided to build the court house, and I did not know that they would. He followed me around and kept on talking about building the court house, and finally said he was no hog, and if he got the contract he would be willing to divide. I told him again I did not know what would be done; don't remember what else was said there. I next met him the following Monday at Matador, on the public square; we met and spoke to each other, and he said he wanted to see me and have a talk with me. I told him I did not have time; as I was getting on my horse to leave town, he asked where he could meet me; I told him I did not know; he then asked if he should come to my house; I told him no, as I did not want him about my house. I next met him at Childress, on the 3rd day of April, 1893; we met on the sidewalk and spoke to each other, and then walked south down to the railroad, across the road to a wagon yard; we were talking all the while about the building of the court house for Motley County, and he was wanting to get the contract to build it if it was to be built. After we had gotten into the wagon yard under a shed, I asked defendant what he would give me if I got him the contract; he then told me if I would vote and use my influence for building the stone court house and awarding him the contract to build the court house, he would give me $500. I replied that I did not think he would offer me less than a thousand or fifteen hundred dollars. He said he could not, but that if I would have the taxable values of Motley County raised, so that the 'county could float $35,000 in bonds, he would then give a thousand dollars for my influence in getting the court house built, and him the contract. We talked awhile, and he agreed to give me the $1,000. I then suggested to him how his and my agreement should be worded; that he write out a contract promising to pay G. W. Cook, commissioner of Precinct No. 4, of Motley County, the sum of $1000, in consideration that the said Cook should vote in favor of building a stone court house in Motley County, and for said Cook's influence in procuring him such contract; he said he would not sign such contract for $10,000, and said he would write out one; nothing further was said then; did not see him any more until the 29th day of April, 1893, when I met him again at Childress; we again had a conversation with regard to the Motley

County court house; he said he would go and write out what he would sign; we separated, and in a short while he brought me this written instrument (which was introduced, and is as follows):

'CHILDRESS, TEXAS, April 29th, 1893.

We, the undersigned, or either of us, agree to pay the sum of one thousand dollars ($1000) to G. W. Cook, payment to be made ten days after Motley County pays to us the first payment on contract for a new stone court house, whether in said county bonds or legal money, said thousand dollars to be paid for a horse sold to us.

[Signed]                    'JACOB RATH,
                            'J. T. CORNETT.'

"When he first brought me the instrument J. T. Cornett's name was not signed to it; I told him the agreement was that Cornett's name was to be to it; he said he was authorized to sign Cornett's name to it, and he took it back into a house near the postoffice and brought it back to me as it is now with Cornett's name to it. I never sold any horse to Jacob Rath or J. T. Cornett; nothing was said about me selling them a horse; the first time I saw defendant was, as stated, at my house on Friday, March 24th; the next time was on Monday, March 28th; next at Childress on April 3d, and the next on April 29th, 1893, when he gave me the writing introduced in evidence; I do not know anything of the defendant's ability to pay; he told me he was a contractor and builder; he first said he would give me $500, and then said he would give me $1000, but nothing was said in our conversation as to when payment was to be made, or that it was to be at some future time."

The defendant, Jacob Rath, testified that he had called on all the commissioners of Motley County and asked for information concerning the proposed building of the court house of Motley County, and that he had called on Cook at his home, and that Cook had said to him that he did not know what the commissioners would do, and that he did not see how he (Cook) would be benefitted or get anything out of it, and that if he voted for the building of the court house he would lose his job with the Matador company, and that he wanted $1000 out of the court house contract. He made an appointment to meet Rath at Childress, and did meet him on the 3rd day of April, 1893. He brought up the subject of the court house, and Cook said he wanted to make something out of it, and that it depended upon his vote whether the court house was built or not. He said he was shipping horses for the I. X. L. ranch, and said he had a splendid cow pony, which was also a good catch race pony, he would sell to me. Rath testified that Cook was continually after him, and repeating that he wanted to make $1000 or $1500 out of the contract; that he would wait for his money until witness made it out of the contract, and that witness refused to promise him anything. Afterwards I asked him what he wanted, and he dictated the instrument that has been introduced as evidence, and I signed

my name and Cornett's to the same. The defendant denied explicitly the statements of the witness Cook, and stated that he had told Cook to do nothing but his duty, that he expected to get the horse as promised by Cook.

Defendant's testimony was corroborated by J. T. Cornett's as to defendant telling Cook to do nothing but his duty as an officer.

*C. C. Wells, A. G. Walker* and *W. G. Gross*, for appellant.—The court erred in overruling defendant's motion to quash the indictment. C. C. P., Art. 421; McMahan v. State, 13 Tex. Crim. App., 220; Costly v. State, 14 Tex. Crim. App., 156; Kerry v. State, 17 Tex. Crim. App., 178; Black v. State, 18 Tex. Crim. App., 184.

The court erred in overruling defendant's first special exception to the indictment.

To constitute the crime of offering to bribe, the offer must be made with intent to influence the officer to do an act in his official capacity in violation of his official duty and the indictment must allege facts that would show that if the officer had done the acts it would have been a violation of his duty as such officer. P. C., Art. 120, 139; Hutcheson v. State, 36 Texas, 293; Collins v. State, 25 Texas Sup., 202.

The court erred in overruling defendant's second special exception to the indictment, because the same failed to allege any question or matter relative to building the court house in Motley County was pending before the Commissioners' Court of said county at the time of the alleged offer to bribe, or that the matter would, by law, thereafter come before them.

When a contract is reduced to writing oral testimony is not admissible to vary or contradict its terms.

The court erred in permitting witness, Cook, to testify over objections of defendant, that he was duly elected and qualified as commissioner of Motley County, because such evidence was secondary in its nature and hearsay, and there was better evidence as to such fact.

If the officer first suggested his willingness to accept a bribe or originated the criminal intent, and after such suggestion the party makes an offer to bribe, he would not be guilty, and the court erred in not so instructing the jury. O'Brien v. State, 6 Tex. Crim. App., 665; O'Brien v. State, 7 Tex. Crim. App., 181.

The court erred in rendering judgment on the verdict because there must be something of value offered or tendered, and the written instrument introduced in evidence does not constitute an offer or tender of a bribe or even a promise to pay it being a void instrument. State v. Wall, 4 Crim. Defs., pp. 288, 419.

There must be an offer or tender or an expression of ability to produce the bribe, or something said or done at the supposed commission of the crime, to show that defendant was able and could and would produce the money at that very time or at least at some definite and stated time. O'Brien v. State, 6 Tex. Crim. App., 665.

To constitute an offer to bribe a judicial officer the proof must show that the question or matter was pending before such officer at the time of the offer or would at some future definite time come before such officer. Collins v. State, 25 Texas Sup., 202; Johnson v. The Commonwealth (Ky.), 13 S. W. Rep., 520.

*Mann Trice,* Assistant Attorney-General, for the State.

HURT, PRESIDING JUDGE.—Appellant was convicted for offering a bribe to a county commissioner of Motley County. It appears from the record that the Commissioners' Court had in contemplation the building of a court house for said county, but that they had not determined to do so. Appellant, being aware that this matter was pending, or would be brought before the court, is charged with offering to bribe one Cook, a county commissioner, to vote for the building of said court house. The indictment is complained of by appellant in motion to quash the same. We have carefully read the indictment, and compared it with the statute defining this offense. We believe it to be good. It is objected to because it does not allege that the appellant offered to bribe Cook to do or omit to do an act in violation of his duty as an officer. This is not necessary. The offense is complete if he offered to bribe the commissioner to vote a certain way on a matter upon which by law he was called upon to vote. The first paragraph of the article defining this offense settles this proposition. Under the second, matters or acts may be done in violation of his duty. In such cases it is proper for the indictment to set them out, but not in this case. To condense, the question was pending before the Commissioners' Court of Motley County as to whether or not they should build a court house for said county. A. offers to bribe one of the commissioners to vote for the building of the house. A. is guilty of offering to bribe an officer, as defined by Article 120, Penal Code. He would be guilty whether it would be for the benefit of said county or not, or whether it would be the duty of said officer to so vote or not. We have examined the other objections to the indictment, but do not believe them well taken. The indictment is sufficient. The special charge requested was not the law of this case, and the court did not err in refusing to submit it. The testimony objected to in the sixth assignment of error was clearly admissible. The written contract was very powerful evidence in support of the charge that he offered to give him $1000. The writing and the verbal propositions all went to prove an offer to bribe, and the rule that you cannot contradict a written instrument does not apply in such a case. It was not necessary, in order to show that Cook was a commissioner, to introduce the record of his election and qualification. Whether or not Cook suggested bribery to the defendant makes no difference in this case. Cook may have been perfectly willing to be bribed, and yet the defendant would be guilty of offering the bribe. We have examined carefully the brief and argument of appellant, and find no error in this record

which justifies a reversal of the judgment.    If Cook was to be believed, it was a clear, unquestionable case of an offer to bribe.    The horse figures in this case as candy, soda water and nuts have figured for a hundred years in the unlawful selling of whiskey.    It was a myth.    The judgment is affirmed.

*Affirmed.*