(No. 27568.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* DUDLEY PATILLO, Plaintiff in Error.

*Opinion filed March 21, 1944—Rehearing denied May 11, 1944.*

DARROW, SMITH & CARLIN, (WILLIAM W. SMITH, and WILLIAM L. CARLIN, of counsel,) all of Chicago, for plaintiff in error.

GEORGE F. BARRETT, Attorney General, and THOMAS J. COURTNEY, State's Attorney, of Chicago, (EDWARD E. WILSON, JOHN T. GALLAGHER, MELVIN S. REMBE, and JOSEPH A. POPE, all of Chicago, of counsel,) for the People.

Mr. JUSTICE STONE delivered the opinion of the court:

Plaintiff in error, Dudley Patillo, was convicted in the criminal court of Cook county on a charge of bribery and sentenced to five years in the penitentiary. The indictment consisted of eight counts. All but the second were *nolle prossed*. He brings the cause here for review. Patillo was a parole officer in the Division of Correction of the Department of Public Safety of the State. His district comprised certain territory on the south side of the city of Chicago. He had under his jurisdiction one James Fountain, a parolee from the State penitentiary, having been theretofore convicted and sentenced to that institution for the crime of robbery.

The indictment charges that it was Patillo's duty to keep in communication with Fountain and observe the manner in which he complied with his parole, to assist him in so doing, to receive reports from him, and in case any order or warrant should be issued by the Division of Correction for the arrest of Fountain for violation of his parole, it was his duty to arrest him on such warrant. It is charged that on January 28, 1943, Patillo feloniously, knowingly, and corruptly received from Fountain $400 as a bribe, tendered with intent to cause him "to perform a duty of him required and execute a power in him vested as such parole officer, with partiality and favor and otherwise than then was required by law," that is, to conceal from the Division of Correction, and fail and neglect to

report thereto, the fact that Fountain had failed to comply with the terms of his parole in that he had bought an automobile, and to obtain dismissal of any order or warrant that had been or might be issued for the arrest of Fountain for·violation of his parole by buying an automobile, and that the money was received by plaintiff in error as a bribe. It is urged here that the evidence failed to show the crime of bribery; that the indictment did not set forth the necessary elements to constitute a charge of bribery, and that there is a variance between the indictment and the proof. It is also alleged that certain errors were committed during the examination of witnesses.

The evidence of the People is that Fountain was paroled in October, 1941, with direction that he reside in Cook county. He came to the district over which plaintiff in error had supervision, and reported to him on an average of twice per month. The evidence also shows that while on parole, he purchased an automobile, signing for the payments, title being taken in the name of Christine Jones, a girl friend. There does not appear to have been any difficulty between Fountain and plaintiff in error. According to the testimony of Fountain, Patillo, on January 7, 1943, telephoned him and asked him to come to his office; that he did so and Patillo told him he had a warrant for his arrest and showed him a letter which had on it: "Pick James Fountain up and deliver him to the diagnostic immediately. See Mr. Higgins first. See Mr. Higgins right away." Fountain testified he did not see who had signed the letter; that Patillo. did not show him a warrant but said there was a warrant for his arrest and an order that he be taken back. Fountain testified that he asked why a warrant was out for his arrest, and Patillo asked him if he had bought an automobile, and the witness replied that he had. He testified that Patillo had a license number on a piece of paper and told him it was a serious offense; that the witness asked Patillo what he could do about it

and the latter replied: "We can have it arranged; we can have a stop warrant," and asked witness if he had any money, stating that if the witness got some money, he, plaintiff in error, might be able to fix it so Fountain could "stay on the street;" that he, Patillo, would talk to Mr. Summers and Mr. Higgins and Mr. Wells, who were his superiors, and let him, Fountain, know how much it would cost him. He testified that plaintiff in error asked for $200, and on January 8 witness gave it to him, and that plaintiff in error also asked for $100 for the chief investigator, $200 for Mr. Wells, and $225 for Mr. Summers, explaining to Fountain that he was doing him a favor and not getting anything.

It appears from the evidence that an investigation was started as result of a complaint being made to the office at Springfield pertaining to this matter, and Milton H. Summers, the Superintendent of the Division, testified that he had the telephone operator in his office call Fountain and ask him to call back in ten minutes asking for Patillo, who was then in the office. This was done and Summers, on an extension, heard Fountain say: "I can't come up with that money tonight because my pay was tied up." Patillo replied: "Well, what do you mean?" Fountain said: "I haven't got the money. I won't be able to get it until Saturday." Patillo then said: "Well, are you coming over Saturday? But be in my office Saturday at eight o'clock; I am counting on you for that money." To which Fountain replied: "All right, I will be there Saturday night." This conversation occurred January 30, 1943. Plaintiff in error was arrested on that date by Patrick McNamara, an officer of the State's Attorney's office, who testified that he took Patillo to the State's Attorney's office where he denied having taken any money, and stated he had nothing further to say. McNamara also testified that plaintiff in error stated in the State's Attorney's office that he was going to take the money; that he figured he had it

coming for past favors, and that $125 was mentioned. This is denied by plaintiff in error in his testimony. He also denied receiving any money.

The State also introduced the testimony of Christine Jones, who testified that she and Fountain's sister-in-law loaned Fountain the money to give to Patillo; that on January 8, she gave Fountain $100 and the following day $50; that before giving the $50 she had seen Patillo in his office on January 9; that Emma Smith, Fountain's sister, went with her to Patillo's office and the sister wanted to know why Fountain was in trouble and what the trouble was. He asked in reply if Fountain had not told them, and she replied that he had not, and he said it was nothing that could not be straightened out. She testified that while they were there, Fountain came in, and she heard Patillo say it had to be straightened out not later than that day. She testified Patillo did not want to talk before her and Emma Smith so they went into the outer room. When they came back Fountain asked how much money they could get together and she told him she only had $50 left. Emma Smith testified in substance the same as Christine Jones. She also testified that after going out into the front room of Patillo's office, she heard Patillo say he had to have some money that night because he had to go to the office and had other men to see who were over him. Fountain said he could get only $150 that day and Patillo said if he could get $150 by five o'clock he would wait for him until five o'clock. A sister of Fountain, Georgia White, testified that after she had a conversation with her sister in regard to Fountain and Patillo, she went out to talk to her friend Rev. Bradley, pastor of the church in that neighborhood, and that thereafter she wrote to Springfield.

Plaintiff in error denied *in toto* having received any money, declared he had loaned $34 to Fountain and that the conversation that was heard by the witness Summers had to do with the return of the balance of that money,

which amounted to nine dollars. He denied that he knew
Fountain had an automobile or discussed his having one,
and that he had not heard about the automobile until in
Summers' office, about January 30. He was asked on cross-
examination whether he had a conversation with one Percy
Jackson, who was introduced to him by a man named
Hughes, and whether he asked Hughes or Jackson to help
him by talking to Fountain, to get him to drop the prose-
cution. He denied that he had ever seen Percy Jackson
or that he had told Hughes or Jackson he could return as
restitution $200 of the money Fountain had given him.
On rebuttal Percy Jackson testified, over objection, that
on or about April 8, 1943, around four or five o'clock,
Hughes came to his house and that he and Hughes went
out to Patillo's car, Hughes getting in the front seat and
he, the witness, in the rear; that Patillo was there and
asked him if he knew Fountain and worked with him, and
he replied he did, and that Patillo said to him he was in
a position to give him a place and a month's rent if the
witness would intercede with Fountain for him; that the
witness was asked to call Hughes the next day and that on
the next day he did call Hughes and told him he could not
do any good, and that Hughes said he would talk to Foun-
tain. A number of character witnesses were offered on
behalf of Patillo. On rebuttal Fountain denied that he had
ever borrowed any money from plaintiff in error.

In support of their contention that the evidence fails
to show the crime of bribery, Patillo's counsel insist that
it was necessary for the People to prove that Fountain had
violated his parole; that plaintiff in error knew he had,
and was charged with the duty of arresting him, and re-
frained from performance of that duty in consideration of
a bribe. They urge that the evidence failed to prove Foun-
tain had violated his parole. The indictment alleged that
the terms of Fountain's parole were "that he reside in said
county of Cook." The indictment also alleged that Foun-

tain had violated his parole by the purchase of an automobile. Patillo's counsel argue that such was not a crime and not ground for returning him to the penitentiary, and that the record was devoid of any proof that Fountain at any time failed to reside in the county. It is argued that to support a charge of bribery it is necessary that those things be shown.

Bribery, at common law and by statute, is the giving or receiving of anything of value or any valuable service or promise thereof, intended to influence any official in the discharge of a legal duty. (*People* v. *Peters*, 265 Ill. 122.) The statute, in effect, declares that whoever corruptly, directly or indirectly, gives any money or thing of value to an officer, with intent to influence his act, in any matter which may be brought before him in his official capacity, or to perform any duty with partiality, the person so giving the money and the officer receiving the same with such intent and purpose, is deemed guilty of bribery. Ill. Rev. Stat. 1941, chap. 38, par. 78, sec. 31, p. 1118.

The count of the indictment under which plaintiff in error was convicted averred, and it is not denied, that Patillo was appointed and acting as parole officer of the State. All matters pertaining to the release of Fountain on parole and to Patillo's supervision over him are likewise admitted. The only issue of fact is whether Patillo corruptly received from Fountain a bribe with intent to have him, Patillo, fail to arrest Fountain or to report to the Division of Correction that he had purchased an automobile, charged to be contrary to his duties as a parolee.

Originally, under the common law, bribery had to do only with influencing the actions of persons in judicial places, identified with the administration of public justice. (*Walsh* v. *People*, 65 Ill. 58; *State* v. *Potts*, 78 Iowa, 656, 43 N. W. 534; *State* v. *Ellis*, 33 N. J. L. 102, 97 Am. Dec. 707.) However, in modern times the crime is defined in most States by statute. Bribery is a crime which directly

affects the State at large through its officers and representatives. The gist of the crime, when charged against a public official, is the accepting of money or thing of value by such public official to influence his official action. *Walsh* v. *People,* 65 Ill. 58.

The exact question here raised seems not to have been heretofore considered by this court. It has, however, been passed upon in other jurisdictions. In *Glover* v. *State,* 109 Ind. 391, 10 N. E. 282, Glover, a township trustee of schools, was convicted of having accepted money as an inducement and bribe to enter into a contract as trustee for the purchase of school furniture for the use of the township. It was argued on his behalf that he was not improperly influenced because the furniture contracted for was worth all that he gave or agreed to give for it. It was held that the purchase of the property is not the gravamen of the offense; that it is entirely immaterial as to the amount, quality or description of the property contracted for, and that the thing which the statute prohibits and declares to be a crime is soliciting or accepting money or other valuable thing by the trustee, to influence him with respect to his official duty; that the vital charge presented by the indictment was that he accepted money to influence his official conduct, and the question was not whether he entered into a contract binding upon the township but whether he accepted a bribe. If he did, he cannot be heard to say that the contract was not enforcible against the township.

In *Rath* v. *State,* 35 Tex. Crim. 142, 33 S. W. 229, defendant was convicted for offering a bribe to a commissioner for his vote on a pending matter. It was held that he should be found guilty regardless of whether it would be for the benefit of the county for the officer to vote as requested by the defendant or whether or not it would be the duty of the officer to so vote. In *State* v. *Lehman,* 182 Mo. 424, 81 S. W. 1118, certain members of the common council were charged with bribery by having accepted and received a

promise of a large sum of money in return for their agreement to vote for a pending measure. It was there stated: "This statute is a denouncement of bribery in all its forms, and under the charge in the indictment, we repeat, it is immaterial whether the agreement was carried out by the parties or not. The offense was complete upon the acceptance of the promise of the gift in pursuance of the corrupt agreement to vote in favor of the measure pending before the municipal assembly."

In *State* v. *Graham,* 96 Mo. 120, 8 S. W. 911, defendant was convicted of bribing a mayor to make an official appointment. It was held it was not necessary, in order to make a valid indictment, to aver that defendant was eligible to the office to which he sought to be appointed, and for the appointment to which he gave the bribe. It was there stated: "The gravamen of the offense interdicted by the statute is the intention to influence the official action of the officer by giving him a bribe, and this is sufficiently set forth in the indictment."

In *People* v. *Markham,* 64 Cal. 157, 30 Pac. 620, defendant, a police officer, was convicted of receiving a bribe with the understanding that he would not arrest persons engaged in violating certain gaming sections of the penal code. It was argued that as the indictment charged that he received this money with the promise that he would not arrest for such offenses, the indictment must also allege that some person or persons did subsequently commit the crime, and the officer, having the opportunity and ability to arrest, failed to do so. In denying this, the court said: "When a police officer receives money in consideration of his promise that he will not arrest any one of a class of offenders against the criminal laws, he is guilty of receiving a bribe, because the case of one who has committed the offense, and the consequent duty of the officer to arrest, is 'a matter which may be brought before him in his official capacity.'" It

was held that in such a case the officer might be held guilty without the necessity of the prosecution establishing the commission of a distinct crime by a third person, together with failure on his part to arrest such third person. It was also there said: "The legislature did not intend that the prosecution should depend upon the fact whether the officer actually had it in his power to carry out the corrupt agreement before the indictment was exhibited." In *People* v. *Jackson,* 191 N. Y. 293, 84 N. E. 65, where a coroner assumed to act judicially in a case in which he was without jurisdiction, his agreement to accept a bribe nevertheless rendered him guilty of the charge of bribery. It is there said: "We do not hold that defendant is estopped from denying that he had jurisdiction, but as his action was in the apparent line of his duty as a public officer, was official in form and intended to be official in fact, that he was guilty, if he accepted a bribe, whether he had jurisdiction or not. Any other rule would be a reproach to the law, for it would encourage official corruption, and tend to subvert the honest administration of justice. The offense of the defendant, whether he was with or without jurisdiction, is the same in morals, and we think it is the same in the eye of the law."

It appears in this case that the matter of reporting any violation of Fountain's parole was within the jurisdiction of plaintiff in error, and we think the rule to be deduced from the purpose and intent of the bribery statute, as well as from these authorities, is, that it is immaterial whether Fountain had violated his parole, or whether his purchase of an automobile was a breach of that parole. The gravamen of the charge is that plaintiff in error accepted a bribe to act partially rather than impartially in a matter which came before him in his official capacity. Counsel for plaintiff in error cite *People* v. *Borella,* 362 Ill. 218, as authority for their argument that it was necessary to prove violation

of the parole by Fountain, and knowledge on the part of Patillo of such violation. In the *Borella case,* Borella and others, as deputy sheriffs, were convicted of accepting a bribe from one Kliner and one ·Levin to conceal the crime of receiving stolen property, and to refrain from arresting Kliner and Levin. It was, in the course of that opinion, said that it was necessary to prove beyond a reasonable doubt that the property was stolen; that Kliner, the one subject to a charge of receiving stolen property, received it knowing it was stolen; that the officers knew of Kliner's guilt; that they were charged with the duty of arresting him, and that they refrained from that duty in consideration of a bribe. Much of that language was unnecessary to the decision of that case, as it was well disposed of on other grounds. Nor is that language applicable here. If the People's witnesses are to be believed, Patillo not only knew of the alleged charge of breach of parole against Fountain, but evidently originated it to secure the bribe. Since the gravamen of the charge is the receipt of a bribe to refrain from doing that which it was the official duty of Patillo to do, had there actually been such a charge against Fountain, we are of the opinion it was not necessary, as indicated by the cases herein cited, that it be proved that Fountain had violated his parole. Patillo cannot now be heard, under the facts of this case, to say there was no charge against Fountain. Whether there was such a charge or not, Patillo caused Fountain to believe there was, and solicited a bribe to prevent arresting or reporting him.

The gist of the offense of bribery is the giving to, and receiving or accepting of money or other valuable thing by, a public officer to influence him with respect to the performance of his official duty. That constitutes the gravamen of the offense denounced by the statute. The charge to be proved and defended was his acceptance of money to· influence his official conduct.

Plaintiff in error's counsel contend there is a fatal variance between the indictment and the proof in that the indictment charged bribery and the proof showed, if anything, that plaintiff in error was guilty of obtaining money from Fountain by false pretense or by extortion; that the proof is that plaintiff in error had no warrant for the arrest of Fountain; that the evidence, if believed, showed plaintiff in error might be found guilty of extortion, as charged in count 4, or of false pretense under count 8, which charged that offense, both of which counts were *nolled* by the People. The fact that other crimes may have been within the proof, does not prevent substantiation of the charge of bribery in this case if, as the evidence of the People showed, he accepted money on a promise to act partially in his official duties.

It is also argued that it was error to admit evidence to impeach plaintiff in error's testimony on a collateral matter. On cross-examination, plaintiff in error denied that he, with Hughes, went to the house of Percy Jackson to secure his aid in an attempt to have Fountain drop the prosecution of the cause, or that he stated he would pay back the money to Fountain, while Jackson testified to the contrary, as hereinabove set out. We cannot agree that the examination in this instance was on a matter collateral to the issue. It had to do with a claimed interview with Jackson, in an endeavor to get him to talk to Fountain for the purposes herein stated. Neither the cross-examination nor its rebuttal was collateral but pertained directly to the issue of plaintiff in error's guilt or innocence. It was a question for the jury which of the witnesses were to be believed.

Finding no error in the record requiring reversal, the judgment of the criminal court is affirmed.

*Judgment affirmed.*