315 P.2d 981

Orlando C. WILLIAMS and National Sure-
ty Corporation, a corporation,
Appellants,

v.

STATE of Arizona ex rel. Robert MORRI-
SON, The Attorney General of
Arizona, Appellee.

No. 6225.

Supreme Court of Arizona.

Sept. 30, 1957.

Whitney & LaPrade, Phoenix, for appellants.

Robert Morrison, Atty. Gen., Jack G. Marks, Sp. Asst. to Atty. Gen., for appellee.

WINDES, Justice.

The state of Arizona filed suit against Orlando C. Williams and the National Surety Corporation, his bondsman, for recovery of profits which the state claimed the defendant Williams made by acquiring title to certain Federal lands during the time he was state land commissioner. The trial court rendered summary judgment against the defendants on the question of liability and tried the question as to the extent of liability and thereafter rendered judgment against Williams for $21,842 and against the surety company for $10,000 with judgment over in its favor against Williams for the latter amount. Defendants appeal.

The undisputed facts as they appear from the record are that during the time of the transactions herein related defendant Williams was state land commissioner of Arizona; that there was brought to his attention a tract of Federal land in Maricopa county; that he examined this land and through the efforts of some land attorneys he personally acquired title to some land in Mohave county and through application to the proper Federal agencies succeeded in exchanging his Mohave county land for

the Maricopa county land. He thereafter sold the Maricopa property for $22,162 realizing a net profit of $21,842. The defendant National Surety Corporation issued its bond in the sum of $10,000 to the effect that Williams would "well, truly and faithfully execute and perform all official duties now required of him by law."

The state's theory of its right to recover is that under the provisions of the Enabling Act the state is entitled to make indemnity selections of Federal land and the state land commissioner is the public official whose duty it is to examine public land for the purpose of making such selection and initiate the necessary proceedings for its accomplishment. So far as applicable the statutes then and now provide (A.R.S. § 37–201; section 11–201, A.C.A. 1939):

"The commissioner shall:

"1. Examine the public lands within the state for the purpose of selecting the lands granted to the state in quantity, or as indemnity, by the enabling act.

"2. Prepare all lists, forms and papers required in the selection of the lands and securing title thereto.

"3. Maintain such records and perform such duties as necessary to protect the rights of the state in the lands."

A.R.S. § 37–202 (section 11–202, A.C.A. 1939) creates a selection board composed of the governor, state land commissioner and the attorney general and provides that this board shall do everything necessary to comply with United States and state law in securing title "to the lands granted to the state in quantity or as indemnity by the enabling act." This section also provides that the board "shall file upon and select, and cause to be withdrawn and surveyed for selection, lands the commissioner from time to time recommends for selection  *  *  *."

From the foregoing provisions of the statute it is clear that the state has designated the land commissioner as the public officer who shall act as its agent to secure indemnity lands from the Federal government. They can only be acquired upon the examination and recommendation of this official. It is upon his discretionary "say-so" whether the necessary request and application is initiated that might ultimately result in the acquisition by the state of valuable property rights. When the land commissioner took steps to acquire this Federal land for himself, he created a situation whereby his private interests became antagonistic to that of the state. One who accepts this office assumes the responsibility of performing the duties given and imposed with complete fidelity and must act only for the best interest of the state. In order that he act only for and on behalf of the state's interest, it is imperative that he have no personal interest that might clash or conflict with that of the state. The relation-

ship between a state official and the state is that of principal and agent and trustee and cestui que trust. He has no right to neglect his official duty or fail to exercise a discretion given and thereby gain a personal profit. Neither has he a right to exercise such discretion in a manner that will result in profit to himself. Public policy requires that personal interests not exist as a possible factor influencing a public official in the performance of his duties. United States v. Carter, 217 U.S. 286, 30 S.Ct. 515, 520, 54 L.Ed. 769. In that case the common law principles heretofore announced are more clearly stated in the following language:

"The larger interests of public justice will not tolerate, under any circumstances, that a public official shall retain any profit or advantage which he may realize through the acquirement of an interest in conflict with his fidelity as an agent. If he takes any gift, gratuity, or benefit in violation of his duty, or acquires any interest adverse to his principal, without a full disclosure, it is a betrayal of his trust and a breach of confidence, and he must account to his principal for all he has received."

On the basis of these principles, the trial court rendered the judgment. Defendants say the common law cannot be invoked for this purpose because of subsection C, section 37–132, A.R.S. (section 11–106, A.C.A.1939), which reads as follows:

"The commissioner, deputy commissioner or any employee of the department shall not have, own or acquire, directly or indirectly, any state lands or the products thereon, any interest in or to such lands or products, or improvements on leased state lands, or be interested in any state irrigation project affecting state lands."

The argument is that since this provision only prohibits the commissioner from owning or acquiring state lands, it operates to abrogate or limit the common law on this subject and consequently, he violated no law since what Williams acquired was Federal land. We are not impressed with this argument. Unquestionably, section 37–132, subsection C, supra, is partially declaratory of the common law but the fact that a statute partially codifies the common law does not necessarily abolish the remainder of the common law rule. 50 Am. Jur., Statutes, section 346, page 339; Bay v. Davidson, 133 Iowa 688, 111 N.W. 25, 27. In that case a contract of a municipal official was attacked as being void under the common law because of the personal interest of the official. The statute prohibited certain kinds of contracts by such officials but did not include the one involved. By way of answer to the contention that the statute limited the common law, the court said:

"It would seem that counsel have in mind the maxim 'expressio unius est exclusio alterius,' (the naming of one person or thing is an exclusion of the other). Reflection will make it clear that the maxim cannot be given application to work a result as here contended for. We have already said in this opinion that contracts of the character here in question are not included in the statute, and this, because the statute refers only to contracts for services or labor. And, in so holding, we have in a sense made application of the maxim above quoted. And, as we have seen, the decree was not predicated upon the statute, and there is no authority, as there can be no reason, for invoking the maxim to give validity to a contract void at common law as against public policy simply because it does not fall within the provisions of the statute. Both contracts for service and contracts of sale are prohibited at common law. The Legislature has done nothing more than to emphasize the prohibition as to service contracts. And, in our opinion, it would be absurd to give effect to the statute as evidencing at once a change of view respecting the matter of public policy, and as a declaration for the legality of all contracts theretofore within the class prohibited at common law save those in such statute prohibited **in** terms."

The state entrusted the land commissioner with the power to secure for it indemnity selections of Federal land. Such power must be exercised free of any conflicting personal interests. It is well said in Bay v. Davidson, supra, quoting Dillon on Municipal Corporations, section 444:

"One who has power, owing to the frailty of human nature will be too readily seized with the inclination to use the opportunity for securing his own interest at the expense of that for which he is intrusted. * * * The law will in no case permit persons who have undertaken a character or a charge to change or invert that character by leaving it and acting for themselves in a business in which their character binds them to act for others."

It will not do to say that if the state had applied, it might not have been successful and the state lost nothing. It lost the opportunity to apply for and possibly obtain the land. It lost the opportunity of getting the benefit of an impartial exercise of a discretion uninfluenced by the personal interest of its agent. If the land was worth $21,000 profit to the agent, the state was entitled to a fair judgment as to whether it should attempt to secure the same. This it did not get because of the operation of the antagonistic interests of the commissioner. The commissioner did not fairly

and impartially perform his official duty and he cannot profit thereby.

■ Defendants offered a trial amendment to their answers to the effect that the amended complaint was a collateral attack upon the decision of the commissioner of the General land office. The court's denial of the application to amend is claimed error. The validity of the title to the land acquired is in no way disturbed. The decision of the commissioner is in no way weakened or disturbed. There is no merit to this assignment of error.

■ At the hearing for the purpose of determining the extent of Williams' Liability, the following transpired:

By Mr. Whitney (attorney for defendants):

"Q. Mr. Williams, referring to United States of America patent in evidence here as Defendants' Exhibit 6, referring to the land described in there, will you tell the Court whether or not you could, as Land Commissioner of Arizona, have selected that land for the State at that time?

"Mr. Pickrell (attorney for plaintiff): I object to that as calling for a conclusion of law from this witness.

"The Court: Isn't the problem to establish the exact character of the land and let the court determine whether or not it could have been selected?

"Mr. Whitney: Well, I assume that is probably true."

The court sustained the objection and complaint is now made that the court should have permitted Williams to show that the particular land was not open to selection. We could hardly consider this ruling reversible error when counsel agreed with the court's suggestion as to the method of proof and no such method was pursued or attempted. In any event no attempt was made to discover whether the land could be selected.

■ Defendant National Surety Corporation urges that the acts committed by Williams were not within the terms of the bond because not official acts of Williams as state land commissioner. Among the conditions of the bond is that Williams would truly and faithfully perform all his official duties. Among the official duties of the commissioner are to examine public lands for the purpose of selecting the same for the state as indemnity and to protect the right of the state therein. He examined the land but instead of taking any steps to protect the interests of the state therein, he used the information obtained from such examination for his personal profit. By this conduct he did not truly and faithfully perform all of his official duties and consequently breached the conditions of his bond, and the surety is liable. The wrongful failure to perform his official duties is as

much a breach of this bond as would be a wrongful performance of an official duty.

Judgment affirmed.

UDALL, C. J., and PHELPS, STRUCK-MEYER, Jr. and JOHNSON, JJ., concurring.