John Kruse and Joseph Scott, Appellants, v. Streamwood Utilities Corporation, et al., Defendants. Streamwood Utilities Corporation, Streamwood Development Corporation, Streamwood Home Builders, Inc., and Morris Dreyfus, and Sidney Robbins, Appellees.

**Gen. No. 48,372.**

First District, Third Division.
February 21, 1962.
Rehearing denied March 21, 1962.

Harry R. Booth, of Chicago, for appellant.

Gilbert H. Hennessey, Jr., Philip W. Tone and Robert E. Pfaff, of Chicago (Thompson, Raymond, Mayer, Jenner & Bloomstein, of Chicago, of counsel), for defendants-appellees, Streamwood Home Builders,

Inc., and Morris Dreyfus and Sidney Robbins, and Bromson Grow, of Chicago (Dale, Haffner & Grow, of Chicago, of counsel), for defendants-appellees, Streamwood Utilities Corporation and Streamwood Development Co.

MR. PRESIDING JUSTICE McCORMICK delivered the opinion of the court.

This is an appeal taken from a summary judgment entered in the Circuit Court of Cook County dismissing the complaint for want of equity.

The complaint was filed as a representative or class suit on behalf of all the homeowners in the Village of Streamwood. It was in three counts. Count I prayed that the franchise of Streamwood Utilities Corporation (hereinafter referred to as "Utilities") be declared void because of the interest of the village board of trustees in the franchise. Count II prayed that the defendants be held to be constructive trustees, for the plaintiffs and the class of persons whom they represent, of the distribution system of Utilities used in the rendering of sewer and water service, or in the alternative that the plaintiffs and the class which they represent be awarded damages representing the payments made by them for the said distribution system. Count III alleges that the plaintiffs and the class represented by them suffered damages due to the unsanitary character of the water, and they pray for an accounting for all damages suffered because of the wrongful and unlawful acts committed by all of the defendants either collectively or individually. There is also a prayer for general relief applicable to all counts.

The complaint was originally filed against Utilities, Streamwood Home Builders, Inc. (hereinafter referred to as "Builders"), Streamwood Development Corporation (hereinafter referred to as "Development"),

Edward McCabe and John Petrie, trustees of the Village of Streamwood, and Howard Haft, its attorney. Subsequently Morris Dreyfus, president of Utilities, and Sidney Robbins, its secretary, were also added as defendants.

A joint answer to the complaint was filed by Utilities and Development, and a separate answer was filed by Builders. An answer was filed by Haft, and the answer of Builders was adopted by Dreyfus and Robbins.

Defendants Utilities, Builders and Development made a motion for summary judgment, and in support of that motion filed affidavits of Howard S. Haft, the village attorney for the Village of Streamwood, Sidney Robbins, secretary of Builders, Brimson Grow, secretary of Development and of Utilities, and Charles D. Tower, secretary and a member of the board of directors of McCabe Engineering Company, which prior to March 1, 1960 did business as a partnership under the name of DeSoto B. McCabe and Associates. Defendants Dreyfus and Robbins later joined in the aforesaid motion.

The admitted facts were that commencing with 1956 one Maxon organized Development for the purpose of acquiring an option to purchase approximately 300 acres of land now included in the Village of Streamwood and developing said land for homesites. Thereafter Dreyfus and Robbins organized Builders, which acquired more than 2,200 acres of land in Streamwood. The Village of Streamwood was organized on February 1, 1956 and has approximately 800 homes and 4,000 residents. Builders and Development hired DeSoto B. McCabe and Associates (hereinafter referred to as "DeSoto") as engineers to render engineering services in connection with the water and sewer plant and distribution system, and with respect to the grading of streets, sidewalks, storm sewers, etc.

After March 1, 1960 the DeSoto firm was incorporated as the McCabe Engineering Company (hereinafter referred to as "McCabe"). McCabe has received and is receiving for its engineering services the sum of $80 per lot, which amounts to a fraction of one percent of the sale price of homes built and sold by Builders, and less than four percent of the sale price of improved lots sold by Development. At the time the suit was filed the cost of the water and sewer mains in the Village of Streamwood was in excess of $600,000. The cost of such water and sewer mains has been paid for by Builders in certain sections of the village and by Development in other sections of the village. It is not clear from the pleadings as to whether all of this amount had been paid McCabe at the time of filing of the suit.

A charter was granted to Utilities by the State of Illinois on March 14, 1957, and Morris Dreyfus, Sidney Robbins, Nathan Robbins, Don Maxon, Morris Haft and David Malkov became the nominal owners of substantially all of the stock of said corporation. All of these shares, except those standing in the name of Maxon and Haft, were transferred and assigned to Builders. Maxon's shares were transferred and assigned to Development, and Haft's shares were transferred to Maxon as a voting trustee.

At the time of the formation of the Village of Streamwood, Edward McCabe, John Petrie and four other employees of the then DeSoto firm were elected as the first board of trustees of the village. Howard Haft was employed as the Streamwood village attorney. Haft's father at one time was a stockholder and official of Utilities.

Subsequently Utilities made application to the Village of Streamwood for a 30-year license or franchise for water and sewer services. The 30-year license was granted by a unanimous vote of the trustees of

the village, and at that time all of the trustees of the village were employees of or partners in the DeSoto firm. Utilities acquired from Builders and Development sewers, water mains, etc., for which it became obligated to pay the reasonable value, which amounted to more than $600,000. Later Utilities sought to have a determination made by the Illinois Commerce Commission as to the original cost of such property, and in this connection figures were prepared and submitted to the commission using the sum of $600,000 paid by Utilities to Builders and Development apparently as an element upon which the commission could approve charges for sewer and water services.

In their complaint the plaintiffs allege that Utilities was organized with the intent to make a "large windfall profit" for the defendants; that at the time the lots were sold to the plaintiffs and the class of persons whom they represent the defendants concealed from them the fact that they intended to have the rates and charges for water and sewer services predicated upon the total water plant including the water and sewer distribution system which had been paid for by the plaintiffs or was being paid for through the mortgages which they had assumed on the lots which they purchased; that the defendants represented through their agents that the water and sewer services would be rendered to the lot purchasers at a nominal cost and that it would not include as an element in the determination of the rates the cost of the original water and sewer distribution system. All of these allegations are denied by the defendants.

In support of the motion for summary judgment made by Utilities, Development and Builders, as to Count I reliance is placed upon the fact that neither McCabe nor its partnership predecessor had made any contract with Utilities nor had received any compensation or payments from it, and upon the fact that

neither the trustees of the Village of Streamwood nor Haft, its village attorney, at the time the franchise was granted had any financial interest in Utilities, Development or Builders. They asked that Count II be dismissed because it does not state a cause of action, and they further assert that Count III is improperly brought as a representative suit because it appears from the complaint that there is no single, common undivided interest held collectively by all members of the class of persons whom the plaintiffs purport to represent. The defendants filed an amendment to the motion, in which they alleged that Counts I, II and III are improperly brought as a representative suit and should be dismissed for want of equity since they are, as stated in the motion, based upon "alleged false representations made by defendants and relied upon by plaintiffs and the class of persons whom they purport to represent." After Dreyfus and Robbins were made additional parties defendant they were given leave to join in the motion for summary judgment filed by Utilities, et al.

The plaintiffs filed a motion to strike the affidavits of the defendants on the theory that they were immaterial and irrelevant. No action was taken on that motion, but the trial court on September 19, 1960 entered a summary judgment dismissing for want of equity the complaint in its entirety, including Counts I, II and III, as to the defendants Utilities, Development, Builders, Dreyfus and Robbins. Two other defendants in the suit, Edward McCabe and John Petrie, had not been served. Howard Haft had been served and he filed an answer but did not join in the motion for summary judgment, nor does the summary judgment affect him. However, the court in the judgment order complies with section 50(2) of the Practice Act by stating that there is no just reason for delaying enforcement of, or appeal from, the judgment, so the matter is properly before us.

 The first question to be considered is whether a class or representative suit was properly brought. The defendants urge that a class suit cannot be brought where fraud is the gist of the action, and cite and rely on Langson v. Goldberg, 373 Ill 297, 26 NE2d 111, where the court stated that a representative or class suit which is based upon fraudulent representations will not lie. In Kimbrough v. Parker, 344 Ill App 483, 101 NE2d 617, which was a case where newspaper advertisements were used to solicit participation in a lottery, the court held that under those circumstances a representative suit was properly brought, and held that the statement made in the Langson case with reference to the impropriety of bringing a representative suit where the reliance is on fraudulent representations was dictum. The defendants distinguish the Kimbrough case from the Langson case on the basis that in the former the representations made to all of the persons who could have been parties in a representative suit were identical.

In Wilkinson v. Heberling, 231 Ill App 516, which was a suit brought by numerous plaintiffs based upon fraudulent representations, the defendants moved to strike the complaint on the ground that it was multifarious and that courts of equity will not entertain complaints of this nature merely to avoid a multiplicity of suits. The court discusses fully the various conflicts in the case law relating to this subject and concludes that the suit was properly brought, particularly since the defendants were charged with a conspiracy or concerted plan to wrong and defraud the plaintiffs, and in support of its decision cites Abbott v. Loving, 303 Ill 154, 135 NE 442, and City of Chicago v. Collins, 175 Ill 445, 51 NE 907. It also cites and quotes from Hale v. Allinson, 188 US 56, 47 L Ed 380, where the court says:

"We are not disposed to deny that jurisdiction on the ground of preventing a multiplicity of suits may be exercised in many cases in behalf of a single complainant against a number of defendants, although there is no common title nor community of rights or interest in the subject-matter among such defendants, but where there is a community of interest among them in the questions of law and fact involved in the general controversy."

In any case, from the pleadings it could be inferred that the misrepresentation allegedly made by the agents of the defendants with reference to the charge of a nominal fee for water could be considered as an essential part of the contract, and consequently the cause of action could be considered as one lying in contract rather than as one based upon fraudulent misrepresentations.

As is pointed out by the courts and the law writers and commentators, the decisions on this subject are numerous and conflicting and each case must be decided on its own merits. In Harrison Sheet Steel Co. v. Lyons, 15 Ill2d 532, 155 NE2d 595, the court holds that the basic consideration in determining the propriety of a class or representative suit is a community of interest in the subject matter and the remedy, citing Smyth v. Kaspar American State Bank, 9 Ill2d 27, 136 NE2d 796, and the court says:

"Where it appears that the common issue is dominant and pervasive, something more than the assertion of hypothetical variations of a minor character should be required to bar the action. (See Kalven and Rosenfield, 'The Contemporary Function of a Class Suit,' 8 U of Chicago L Rev 684, 694; Gordon, 'The Common Question Class Suit,' 42 Ill L Rev 518.) The company's opportu-

nity to defend any individual issues that may arise will not be impaired, and it can hardly be said that it will suffer greater inconvenience by litigating those issues in a single action instead of in separate actions."

We hold that in this case a class suit could properly be brought as to Counts I and II.

██ The plaintiffs urge that the court was in error in entering summary judgment. The rule governing the procedure in summary judgment has been iterated and reiterated in the opinions of the Supreme Court and of this court. It has been repeatedly said that the intended purpose of the summary judgment statute (Ill Rev Stats 1959, c 110, § 57) is not to authorize the court to try issues of fact but is to permit the court to determine whether there is any genuine issue of fact before the court. In Halloran v. Belt Ry. Co. of Chicago, 25 Ill App2d 114, 118, 166 NE2d 98, 100, the court makes the following statement with reference to summary judgment procedure:

"This procedure may not be used to impair the right of trial by jury. Its purpose is not to try an issue of fact, as it is only when the undisputed facts are susceptible of but a single inference does the issue become one of law. (Inland Steel Co. v. Industrial Commission, 18 Ill2d 70, 78 (1959).) Questions which are composed of factors sufficient to cause reasonable men to arrive at different results should never be determined as matters of law. (Ney v. Yellow Cab Co., 2 Ill2d 74, 84 (1954).) Defendant's right to judgment must be free from doubt. If the pleadings, discovery depositions and exhibits present a genuine issue as to any material fact, the judgment order ought not to have been entered. Naus v. Joanna-

109

Western Mills Co., 18 Ill App2d 85, 92 (1958); Allen v. Meyer, 14 Ill2d 284, 292 (1958)."

The complaint in this case is drafted in an unusual manner. The first portion of the complaint sets out the allegations and each count adopts that portion of the complaint and points out the conclusions which the pleader draws from the allegations. Then after each count is thus set out, seven prayers for relief are included, some of which apply to one count and some to another. The prayer applicable to Count I is that the franchise of Utilities be declared void because of the interest of the village board of trustees in the franchise.

It is admitted that McCabe or its predecessor contracted with Development and Builders to render engineering services in connection with the water and sewer plants, that the rate of its compensation was fixed at $80 per lot, and that the cost of the water and sewer mains in the Village of Streamwood at the time the suit was filed was in excess of $600,000. The trustees of the Village of Streamwood were all either officials or employees of McCabe and had also been employees of its predecessor. All of the stock of Utilities at the time it was incorporated was issued to designated persons as nominal holders. All of such shares were transferred either to Development or Builders. Morris Haft's shares were transferred to Maxon, one of the parties interested in Development and Builders, as voting trustee.

Paragraph 9-91, chapter 24, Illinois Revised Statutes, 1957, provides: "No municipal officer shall be interested, directly or indirectly, in any contract, work, or business of the municipality . . . ." Paragraph 3, chapter 102, provides:

> "No person holding any office, either by election or appointment under the laws or constitution of this state, may be in any manner interested,

either directly or indirectly, in his own name or in the name of any other person, association, trust or corporation, in any contract or the performance of any work in the making or letting of which such officer may be called upon to act or vote. . . . Any contract made and procured in violation hereof is void."

The plaintiff argues that the trustees' relationship with Utilities came within the prohibition of the above statute and therefore the 30-year sewer and water license was invalid. The defendants argue that at no time were any of the trustees employees of or connected in any way whatsoever with Utilities, and that consequently the interest which they had was too remote to make the contract void.

It would seem that the purpose of the statute was to meet a situation such as this. The legislature had definitely stated in the statute that an indirect interest is sufficient. In this particular case the trustees had been employees and members of the partnership which preceded the formation of the McCabe corporation. At the time the license was granted they were employees or officials of that corporation. They voted unanimously in favor of the license. It is admitted in the answers of Utilities, Builders and Development that the McCabe partnership had been retained by Builders and Development and "have received and are receiving for such services the sum of $80.00 per lot," in other words, that at the time the license was granted to Utilities the McCabe partnership had a continuing pecuniary interest in the installation of the water and sewer pipes. In Panozzo v. City of Rockford, 306 Ill App 443, 28 NE2d 748, the court discusses the effect of a contract made by a municipality where the aldermen passing on the contract had an interest in the same. The court cites People ex rel. Pearsall v. Sperry, 314 Ill 205, 145 NE 344, in which the court

111

held that where city officers join in making a contract with the city in which they are interested directly or indirectly, such contract is void, and in that case it is further stated that the general rule is that in order to render void a contract with a municipality the interest which the public officer has in such contract must be pecuniary and that the question of the direct or indirect interest in the contract on the part of the municipal officers does not depend upon whether or not they receive a direct benefit from the contract itself. Nor are they relieved by the fact that there was no intentional bad faith, or that no injury resulted to the person alleging that the contract was void. The court points out that the city officers would be more than human if they could make as fair and impartial a contract with a contractor employing them as they could with another party with whom they had no relation by way of contract or otherwise. See McQuillin, Law of Mun Corp, 3rd Ed, V 10, § 29.99.

The defendants rely upon the fact that the contracts with DeSoto were made by Builders and Development and that Utilities was not a party to any such contract, and that it was not shown that at the time the license was granted to Utilities that Development and Builders had any interest in Utilities. This is not borne out by the record, since there is no showing as to who were the real owners of the stock of Utilities at the time of its organization. The owners mentioned in the record are admittedly nominal owners. The record shows that one of these, Grow, was secretary of Development and also secretary of Utilities. Two of the other nominal holders of the Utilities stock, Dreyfus and Robbins, were principal officers and owners of Builders. Defendant Haft was also a nominal holder of the stock. Maxon was the organizer, principal stockholder and treasurer of Development. He was active in the organization of Utilities and a nominal holder

of a substantial number of shares of stock of that corporation. Subsequently the nominal holders transferred practically all of their stock to Development and Builders.

In Dregne v. Five Cent Cab Co., 381 Ill 594, 46 NE2d 386, the court lays down the rule that it is sufficient in order to treat one corporation as the alter ego of another where there is such a unity of interest and ownership that the individuality of one corporation has ceased, and where the observance of the fiction of separate existence would under the circumstances sanction a fraud by promoting injustice. In Ohio Tank Car Co. v. Keith Ry. Equipment Co., 148 F2d 4 (7th Cir), the court says: "The general rule that a corporation and its stockholders are deemed separate entities is subject to the qualification that the separate identity may be disregarded in exceptional situations where it otherwise would present an obstacle to the due protection or enforcement of public or private rights."

The fact that none of the trustees have any direct relation whatsoever with Utilities is immaterial when we consider that Utilities was brought into existence by persons who were interested in Development and Builders, and practically all of the stock of Utilities is the stock of Development and Builders. There are further allegations in the complaint that the creation of Utilities and the sale to it of the utilities by Development and Builders were a part of a conspiracy among all the defendants to take advantage of the class represented by plaintiffs. In other words, there is sufficient in the complaint from which the inference may be drawn that Utilities was brought into existence as a corporation by its now owners, Development and Builders, and there is sufficient merger of the identities of the corporations to bring the grant of the license within the purview of the statute, providing there is proof that at the time the license was

113

granted McCabe or its predecessor was still receiving payment on its contract from Development and Builders.

In United States v. Mississippi Valley Generating Co., 364 US 520, 5 L Ed2d 268 (1961), the court held that a government contract was unenforceable due to the government conflict of interest statute, which is addressed to the same evil as the Illinois statute. In discussing the purpose of the statute the court says: ". . . its primary purpose is to guarantee the integrity of the federal contracting process and to protect the public from the corruption which might lie undetectable beneath the surface of a contract conceived in a tainted transaction. . . . It is this inherent difficulty in detecting corruption which requires that contracts made in violation of Section 434 be held unenforceable even though the party seeking enforcement ostensibly appears entirely innocent."

The question of the trustees' interest in the franchise was not sufficiently resolved by the pleadings and affidavits filed. In our opinion there exists a genuine and material issue of fact on this point, and the trial court erred in entering a summary judgment with reference to Count I of the complaint.

 In Count II of the complaint the plaintiffs pray that the defendants be held constructive trustees, for the plaintiffs and the class of persons whom they represent, of the distribution facilities used in the rendering of sewer and water service, and pray in the alternative that the plaintiffs and the class which they represent be awarded damages representing payments made by them for the said distribution system.

In Count II the plaintiffs seek to have the court declare a constructive trust, the res to be the sewer and water pipes and other equipment installed in the subdivision. The plaintiffs rely on Peterson v. Yacktman, 25 Ill App2d 208, 166 NE2d 452. In that case the plaintiff alleged that the defendant represented that

114

he would not provide the plaintiff with water service unless they paid him certain specific sums of money for the purpose of constructing portions of the transmission mains, etc., and that such money was paid to the defendant on his representation that he was engaged in the operation of a public water utility, which statement was untrue. The court held in that case the trial court properly entered money judgments in favor of the plaintiffs. The facts in that case differ from those set out in the complaint in the case before us. In that case there was a distinct and specific sum of money which as the trust res could be traced into the utility facilities. Here under the allegations this was not the case. There was no allegation that any specific sum was collected from the purchasers to be applied to the construction of water mains, etc. The plaintiffs in the alternative sue for damages. The petition filed in the trial court asked for a summary judgment on the second count. In the affidavits filed there was nothing stated with reference to that count. In their brief in this court the defendants take the view that, while the court entered a summary judgment upon a petition so praying, the judgment entered by the court was properly a judgment on the pleadings under section 45. Sometimes a plethora of remedies is worse than a paucity. The defendants, by stating that the judgment with reference to Count II entered by the trial court should be considered as a judgment on the pleadings, tacitly imply that a summary judgment was improperly entered. The argument of defendants in support of what they state should properly be designated as a judgment on the pleadings with reference to Count II is the same argument made in support of the summary judgment on Count I. The same rule should be applied, and the judgment of the trial court with reference to Count II should also be reversed.

■ The plaintiffs make no argument with reference to the judgment of the trial court on Count III

of the complaint. The defendants in their brief suggest that the plaintiffs have abandoned their appeal with reference to that count. This statement in the brief of the defendants is not controverted in the reply brief of the plaintiffs. Under the rules of this court we will not consider the propriety of the court's judgment with reference to Count III.

The judgment as to Count III is affirmed, and as to Counts I and II the judgment is reversed and the cause remanded for further proceedings consistent with this opinion.

Affirmed in part; reversed in part and cause remanded.

DEMPSEY and SCHWARTZ, JJ., concur.