LEONARD FUCHS *et al.*, Plaintiffs-Appellants, *v.* ARTHUR J. BIDWILL *et al.*, Defendants-Appellees.

(No. 12284; ▇▇▇▇▇▇▇▇▇▇▇▇

Fourth District—August 14, 1975.

568

CRAVEN, J., dissenting.

Alexander Polikoff, David M. Marks, and Thomas R. Meites, all of Chicago, and Thomas Londrigan, of Londrigan & Potter, of Springfield, for appellants.

R. G. Heckenkamp, of Heckenkamp & Fuiten, of Springfield, for appellees Clyde W. Choate, John W. Lewis, Jr., and William J. Murphy.

Kenneth E. Critser, of Kritzer, Stansell & Critser, of Monmouth, for appellee Robert T. McLoskey.

John M. Bookwalter, of Acton, Bookwalter, Meyer & Smith, of Danville, for appellee Barbara Peters.

William T. Panichi, of Springfield, and Jack E. Walker, of Lansing, for appellee Lillian H. Pollack.

Edward F. Casey, of Casey & Casey, of Springfield, and Roger Boylan, of Chicago, for appellees Arthur J. Bidwill, A. L. Cronin, and Clyde Lee.

Mr. JUSTICE TRAPP delivered the opinion of the court:

Plaintiffs having elected to stand upon their complaint, the trial court dismissed with a judgment order their action for an accounting and to impose a constructive trust in favor of the State of Illinois upon monies alleged to have been received by the defendants in violation of their fiduciary relation and duties as legislators. Plaintiffs appeal.

It was alleged that the plaintiff Fuchs is a citizen, resident and taxpayer bringing the action for the benefit of the State following the refusal of the Attorney General to institute or prosecute such an action. The plaintiff, Businessmen for the Public Interest, is described as an Illinois not-for-profit corporation concerned with the prevention of corruption and self-dealing in public office, which has acted as a public-benefit corporation by asserting the interest of the public in preventing official misconduct.

It is alleged that in 1960, one Everett owned, operated and controlled two race tracks through certain corporations; that in 1960 she organized a corporation to conduct harness racing at one of such race tracks and that upon such organization the corporation was awarded prime racing dates and continued to be awarded such favoring dates through 1968, and that as a result the corporation earned large profits.

Plaintiffs allege that defendants were members of the State legislature with power and influence, individually and collectively with respect to the passage of legislation affecting the profits of racing through the licensing, regulating and taxing of horse racing. It is further alleged that following the organization of such corporation, Everett in 1961 and thereafter from time to time, secretly made available to the several defendants shares of the corporation at the price of one dollar per share in amounts ranging from 3000 to 4900 shares, and that beginning in 1965 and thereafter at various times, Everett arranged to buy back from the defendants such shares or portions of such shares at prices ranging from three dollars to seven dollars per share and that in such transactions the defendants made large profits doubling their investments, and in some instances making a much greater profit, and that the transactions were carried out secretly through divers means to conceal the ownership of the shares by the respective defendants.

It is further alleged that Everett made such shares available to defendants because his public office enabled each to exercise power and influence in legislation concerning horse racing and that the racing which the corporation provided would profit through the exercise of such power

and influence; that each defendant knew of such reason for making the shares available to him and knew that while such shares were made available to the several defendants such shares were not generally available to persons who were not members of the General Assembly.

The complaint prayed that each defendant be declared a constructive trustee for the benefit of the State of Illinois of any shares which he now owns, directly or indirectly, and of all proceeds received by him, directly or indirectly, from such shares and that he be required to account for all proceeds received from shares so owned, and that each defendant be required to account for all such shares owned by him at any time and for all proceeds and profits realized therefrom.

The several defendants filed motions to dismiss the complaint and the order of the trial court was entered upon findings, (1) that the plaintiffs have no standing in court to file the action, and (2) that the complaint was insufficient as a matter of law.

■■ For purposes of the review of such judgment, well-pleaded allegations and the reasonable inferences therefrom are to be taken as true. *Adams v. J. I. Case Co.*, 125 Ill.App.2d 388, 261 N.E.2d 1.

The parties state the issues variously. In sum such include whether, upon the allegations made, legislators have a fiduciary duty which they violated, whether plaintiffs have standing to bring the action where they suffer no individual injury and no public funds were distributed or dissipated and whether citizens may bring the action when the Attorney General declines to proceed.

Defendants urge that the complaint is insufficient in that it fails to allege the equitable ownership of public funds as in *United States v. Carter*, 217 U.S. 286, 54 L.Ed.2d 768, 30 S.Ct. 515; *Fergus v. Russel*, 270 Ill. 304, 110 N.E. 130; *People v. Holten*, 287 Ill. 225, or the enforcement of a trust in public property as in *Paepcke v. Public Building Com.*, 46 Ill.2d 330, 263 N.E.2d 11.

It is also contended that the complaint is insufficient in that it fails to allege that the defendants did anything which was contrary to the interests of the public or that there was a wrongful act, and that no facts alleged which show an exercise of power or influence to aid Everett. We note that the motion of at least one defendant did state that statutes related to horse racing were enacted during the period in question.

■■ It has long been agreed that public officials occupy positions of public trust.

> "A public office is a public trust and the holder thereof cannot use it directly or indirectly for a personal profit; and officers are not permitted to place themselves in a position in which personal

interest may come into conflict with the duty which they owe to the public." (46 C.J. *Officers* § 308, at 1037 (1928).)

Incident to said trust:

> "They stand in a fiduciary relationship to the people by whom they have been elected and appointed to serve." (*Jersey City v. Hague* (1955), 18 N.J. 584, 589-90, 115 A.2d 8, 11.)

The relationship between a State official and the State is that of principal and agent and trustee and cestui que trust. The relationship has been described as founded in the common law.[1] *Williams v. State* (1957), 83 Ariz. 34, 315 P.2d 981; *Driscoll v. Burlington-Bristol Bridge Co.* (1952), 8 N.J. 433, 86 A.2d 201; *Jersey City v. Hague* (1955), 18 N.J. 584, 115 A.2d 8; *Panozzo v. City of Rockford,* 306 Ill.App. 443, 28 N.E.2d 748.

In *United States v. Carter,* 217 U.S. 286, 54 L.Ed. 769, 30 S.Ct. 515, action was brought for an accounting and recovery of the secret proceeds and profits received by an officer who administered a public contract. The court said:

> "The large interests of public justice will not tolerate, under any circumstances, that a public official shall retain any profit or advantage which he may realize through the acquirement of an interest in conflict with his fidelity as an agent." 217 U.S. 286, 306, 54 L.Ed. 769, 775-76.

■■ Since 1871, Illinois has had a statute defining the fiduciary nature of public office.[2] (Ill. Rev. Stat. 1971, ch. 102, par. 3) As amended in 1949, it provides:

> "No person holding any office, either by election or appointment under the laws or constitution of this state, may be in any manner interested, either directly or indirectly, in his own name or in the name of any other person, association, trust or corpora-

---

[1] "These obligations are not mere theoretical concepts or idealistic abstractions of no practical force and effect; they are obligations imposed by the common law on public officers and assumed by them as a matter of law upon their entering public office." *Jersey City v. Hague* (1955), 18 N.J. 584, 591, 115 A.2d 8, 12.

[2] We conclude that the Governmental Ethics Act, effective January 1, 1968, does not create a new obligation but states more explicitly the fiduciary status of a public official which equity has long asserted. (Ill. Rev. Stat. 1967, ch. 127, par. 601—105 *et seq.*) Section 1—105 includes: " 'Economic opportunity' means any purchase, sale, lease, contract, option, or other transaction or arrangement involving property or services wherein a legislator may gain an economic benefit. The term shall not include gifts."

Part 1 of article 3 of that Act provides: "Rules of Conduct for Legislators". Section 3—102 of that Act: "No legislator may accept any economic opportunity, under circumstances where he knows or should know that there is a substantial possibility that the opportunity is being afforded him with intent to influence his conduct in the performance of his official duties."

tion, in any contract or the performance of any work in the making or letting of which such officer may be called upon to act or vote. \* \* \* Nor may any such officer take or receive, or offer to take or receive, *either directly or indirectly, any money or other thing of value as a gift or bribe or means of influencing his vote or action in his official character.* \* \* \*" (Emphasis supplied.)

■■ . The principles of equity related to fiduciary liability do not require the discovery of actual harm or measurable injury to the public. The Restatement of Restitution § 197 (1963) provides that a fiduciary who received profit in violation of his duty "holds what he receives upon a constructive trust for the beneficiary." Comment c explains:

"The rule stated in this Section is applicable although the profit received by the fiduciary is not at the expense of the beneficiary. \* \* \* The rule stated in this Section, like those stated in the other Sections in this Chapter, is not based on harm done to the beneficiary in the particular case, but rests upon a broad principle of preventing a conflict of opposing interests in the minds of fiduciaries, whose duty it is to act solely for the benefit of their beneficiaries."

In such light the ownership of public funds or a trust of public property is not the controlling criteria followed by the courts. In *United States v. Drumm* (1st Cir. 1964), 329 F.2d 109, defendant was employed full time as a poultry inspector. For some 5 years during such employment he was also engaged as a "consultant" by the businesses which he inspected. In an action for an accounting of $35,000 earned as such consultant, a directed verdict for defendant was reversed. The court said that a jury could conclude that there was such a conflict of interest as would compromise the position of an impartial inspector. Again, in *Williams v. State* (1957), 83 Ariz. 34, 315 P.2d 981, it was the duty of the State Land Commissioner to procure Federal land for the State. He procured some Federal land, not associated with any State land, for himself and sold it to a stranger at a profit. He was held liable to account for the profit as there was a conflict of interest with his duty to procure land for the State.

In *Jersey City v. Hague* (1955), 18 N.J. 584, 115 A.2d 8, plaintiff sought to impress a constructive trust upon the property of the defendants in an amount of $15,000,000 to recover sums alleged to have been obtained by defendants as a "kick-back" from the salaries of municipal employees over a period of 30 years. One count of the complaint alleged that the money had been wrongfully extorted from employees of the city as a condition of employment. The court reversed the order of the trial court dismissing the action and remanded, saying as to such count

that the theory of the constructive trust was for the profits realized by the defendants as public officials.

Since the rule defining the responsibilities of public officials is not based upon harm necessarily done but upon equitable principles of preventing a conflict of opposing interests in the minds of officials, there is little persuasive weight in the contention that the complaint fails to allege facts which disclose that defendants did anything which was contrary to the public interest, that there are, or were, wrongful acts, or which disclose an exercise of power or influence to aid Everett. In *United States v. Drumm* (1st Cir. 1964), 329 F.2d 109, the court noted that if the evidence showed a breach of fiduciary duty, the absence of evidence that the inspector passed bad poultry would not bar recovery. In *United States v. Carter*, 217 U.S. 286, 54 L.Ed. 769, 30 S.Ct. 515, it was contended that the evidence showed that the work managed by the official who received the secret profit was well done and performed satisfactorily. The court said:

> "It would be a dangerous precedent to lay down as law that unless some affirmative fraud or loss can be shown, the agent may hold on to any secret benefit he may be able to make out of his agency." 217 U.S. 286, 306, 54 L.Ed. 769, 775.

Again, we note that the statute defining bribery[3] (Ill. Rev. Stat. 1971, ch. 38, par. 33—1) contains language substantially similar to that in the statutes concerning officers (Ill. Rev. Stat. 1971, ch. 102, par. 3). In the circumscribed area of a prosecution for bribery it is held that it is immaterial whether the acts for which the bribe was given are performed. (*People v. Patillo*, 386 Ill. 566, 54 N.E.2d 548.) It is said that the gist of the charge of bribery is the acceptance of a thing of value to influence official action. (*People v. Clemons*, 26 Ill.2d 481, 187 N.E.2d 260.) We do not conceive that the equitable doctrine of restitution by an official in a fiduciary status must operate more strictly.

■■ It is argued that this action may be brought only by the Attorney General. Our statutes do not so specify. Upon the date of the complaint, section 4 of "An Act in regard to attorneys general and state's attorneys" (Ill. Rev. Stat. 1971, ch. 14, par. 4) provided in its relevant portions that the Attorney General shall (1) represent the people of the state before the supreme court in all cases in which the state or the people are in-

---

[3] "A person commits bribery when:

      *      *      *

d. He receives, retains or agrees to accept any property or personal advantage which he is not authorized by law to accept knowing that such property or personal advantage was promised or tendered with intent to cause him to influence the performance of any act related to the employment or function of any public officer, public employee or juror; or  *  *  *."

terested; (2) institute and prosecute actions "in favor of and for the use of the state which may be necessary in the execution of the duties of any state officer"; (3) defend actions against any state officer in his official capacity; (4) to consult with and advise State's Attorneys and (5) to attend and perform any other duty which may be required of him by law.

In *Saxby v. Sonnemann,* 318 Ill. 600, 149 N.E. 526, we find a comparable proceeding for accounting against a member of the legislature for the salary received as an assistant attorney general during his term as a member of the legislature. The court sustained the judgment awarded for such salary. See also *Kruse v. Streamwood Utilities Corp.,* 34 Ill. App.2d 100, 180 N.E.2d 731.

In *Paepcke v. Public Building Com.,* 46 Ill.2d 330, 263 N.E.2d 11, it was held that a citizen and a taxpayer may bring an action for equity to enforce a trust in public land. In holding that it was not necessary that such plaintiff have a special damage or injury, the supreme court overruled *Droste v. Kerner,* 34 Ill.2d 495, 217 N.E.2d 73. The court said:

> "If the 'public trust' doctrine is to have any meaning or vitality at all, the members of the public, at least taxpayers who are the beneficiaries of that trust, must have the right and standing to enforce it. To tell them that they must wait upon governmental action is often effectual denial of the right for all time." 46 Ill.2d 330, 341.

As stated in *Jersey City v. Hague,* 18 N.J. 584, 595, 115 A.2d 8, 15:

> "[T]he development of the principle of restitution, both at law and in equity, as a remedy for breach by a public official of his fiduciary obligations has obviously been salutory. Restitution, by virtue of its adaptability to individual cases on equitable principles may, as we have seen, reach situations beyond the grasp of other civil or criminal remedies and do justice on equitable principles * * * *."

We note and distinguish the somewhat comparable action to enjoin the disbursement of public monies as provided by statute (Ill. Rev. Stat. 1971, ch. 102, par. 11 *et seq.*). Such statute provides that the action may be maintained by either the people or the Attorney General, but that if the Attorney General does not proceed a taxpayer bringing the action must obtain leave of court. Such statutory limitation is provided to prevent the indiscriminate filing of suits which would delay the administration of public funds. (*Strat-O-Seal Manufacturing Co. v. Scott,* 27 Ill.2d 563, 190 N.E.2d 312.) Such hazard does not appear in this action for a public trust and accounting.

The essential issues raised by the several motions concerning the sufficiency of the complaint as a matter of law have been covered in the foregoing discussion.

The judgment of the trial court is reversed and the cause is remanded for further proceedings not inconsistent with the views expressed.

Reversed and remanded.

SIMKINS, P. J., concurs.

Mr. JUSTICE CRAVEN, dissenting:

The issue before this court is whether the complaint states a cause of action. The trial court said "no" and I agree, for several reasons.

First, the plaintiffs have no standing to sue under the laws or judicial precedents in Illinois. None of the cases cited by the majority stands for the proposition that private parties or private not-for-profit corporations may initiate proceedings to recover a money judgment on a cause of action held by the State. Rather, the private parties in the cited cases were allowed to bring actions to enjoin misapplication of State funds. Without passing on the desirability of the cause of action the plaintiffs seek to establish or the possible harm to society in the activities they seek to discourage, the creation of a new cause of action of this magnitude should be by the legislature, not this court.

Second, the allegations of the complaint are conclusory in nature and fail to allege facts sufficient to support a cause of action.

Even if we set aside the lack of standing and the deficiency of the pleadings, what plaintiffs seek here is an opportunity to act in a private capacity as "attorneys-general" for the State. Illinois has no provision for such private attorneys-general. Moreover, this particular case is unusual in that plaintiffs' allegations, if true, charge the crime of bribery. (Ill. Rev. Stat. 1973, ch. 38, § 33—1.) Plaintiffs admit that the Attorney General has been asked to take action in this case and has refused; consequently, to allow the plaintiffs to act would be to allow them to usurp the powers of the Attorney General or the State's attorney in his role as enforcer of criminal laws.

Finally, I note that an essential allegation—that the defendants used their power and influence to benefit the individual who made this stock available to them—is supported by no factual allegations. Throughout the stated period, there were no significant changes in statutes governing harness racing. (See Ill. Rev. Stat. 1959 through 1969, ch. 8, § 37s. *et seq.*) Thus, the defendants, as legislators, could have favored Mrs. Everett's interests only in collusion with the governor, who appoints to the Illinois Racing Board, the Senate, which confirms such appointments, and the Board members themselves, who actually assign racing dates. No such conspiracy is alleged.

I would affirm the trial court's dismissal of this complaint.