701 P.2d 593

**Larry E. MAUCHER, a single man, Plaintiff/Appellee,**

v.

**CITY OF ELOY, a municipal corporation, Defendant/Appellant.**

No. 2 CA–CIV 5166.

Court of Appeals of Arizona, Division 2.

Jan. 14, 1985.

Review Denied May 7, 1985.

Chandler, Tullar, Udall & Redhair by Steven Weatherspoon, Tucson, for plaintiff/appellee.

Shimmel, Hill, Bishop & Gruender, P.C. by Andrew W. Bettwy and David N. Farren, Phoenix, for defendant/appellant.

## OPINION

HATHAWAY, Judge.

The City of Eloy has appealed from a Pinal County Superior Court judgment awarding Larry E. Maucher, appellee, $80,036.35 with interest, costs and attorneys fees. This action for an alleged breach of contract by the City of Eloy, seeking alleged deficiencies in payment for engineering services, was tried to the court, sitting without a jury. We find that the contract

was entered in violation of the conflict of interest statute and is unenforceable.

Maucher was city engineer for the City of Eloy from sometime in 1978 until March 12, 1981. On December 10, 1979, the Eloy City Council formally recommended approval by Farmers Home Administration of an "Agreement for Engineering Services" which had been executed by Maucher and Reynaldo G. Teran, as city manager, on behalf of the City of Eloy. The agreement related to services in connection with water improvements and provided fee schedules for engineering services. Disagreement arose between the parties over alleged modifications of the agreement by Maucher and the city manager to the applicable fee schedule. The city refused to recognize the modified agreement and refused payments thereunder.

The city contends that Maucher by his failure to heed the mandates in A.R.S. § 38–503 is estopped as a matter of public policy from enforcing the contract. This was the basis for its motion for summary judgment reurged at the end of the plaintiff's case in chief [1] and it was a primary defense throughout the proceedings. A.R.S. § 38–503 provides:

"A. Any ... employee of a public agency who has, ... a substantial interest in any contract ... to such public agency shall make known that interest in the official records of such public agency and shall refrain from ... participating in any manner as an ... employee in such contract....

B. Any ... employee who has ... a substantial interest in any decision of a public agency shall make known such interest in the official records of such public agency and shall refrain from participating in any manner as an ... employee in such decision.

C. ... [N]o public ... employee of a public agency shall supply to such public agency any ... services, unless pursuant to an award or contract let after public competitive bidding...."

■ Recourse available for violation of the conflict of interest statute is set forth in A.R.S. § 38–506 as follows:

"A.R.S. § 38–506. Remedies

A. In addition to any other remedies provided by law, any contract entered into by a public agency in violation of this article is voidable at the instance of the public agency."

It is uncontroverted that Maucher was city engineer for the City of Eloy, thus an employee within the statute, when the agreement in question was entered.[2] The City of Eloy contends that he violated the conflict of interest statute in that he (1) failed to make his interest known in the City of Eloy's official records (although it is contended that his interest was obvious), (2) he participated in providing input facilitating the city council's decision to award the contract to him, and (3) the contract was let without the benefit of public bidding. Although it is conceded that no written disclosure of Maucher's interest could be found in the official records of the City of Eloy, it is contended that a tape of the December 10, 1979, meeting discloses his interest and that the tape is an official record of the city. No transcript of the tape has been made a part of the record. The tape has been reviewed by the court and we find it confusing in that it is comprised of unidentified voices. However, even assuming that it fulfills a sufficient disclosure of Maucher's interest to meet the statute, it is apparent that he participated in an advisory capacity to the city in its determination

---

1. "MR. BETTWY: Yes, sir. I would like for the record to reurge the motion for summary judgment insofar as it relates to the conflict of interest problem, failure to have had this matter competitively bid and failure to have made a public record of the interest in the contract."

2. "§ 38–502. Definitions

In this article, unless the context otherwise requires:

\* \* \* \* \* \*

2. 'Employee' means all persons who are not public officers who are employed on a full, part-time or contract basis by an incorporated city or town,...."

to make the contract. The explanation is given that:

> "It is obvious from the expectations of the Mayor and Council that one of the prime motivations in being the City Engineer was the fact that any available contracts would be available to the City Engineer as a private consultant."

The explanation does not excuse compliance with the statute; rather it discloses a reason for compliance and indeed a fundamental reason for the conflict of interest statute.

It is uncontroverted that the contract was let without competitive public bidding. Appellee explains that public bidding is not required when dealing with an engineer and cites Attorney General Opinion 75–9 as authority. The opinion is inapposite. It states that the acquisition of engineering services by state budget units must be preceded by competitive bidding per A.R.S. § 41–1051, et seq., rather than A.R.S. § 41–721. The instant case is governed by A.R.S. § 38–502(7), effective October 1, 1978, which provides:

> " 'Public competitive bidding' means the method of purchasing defined in title 41, chapter 4, article 3, or procedures substantially equivalent to such method of purchasing...." (1984–85 Supp.)

Thus the controlling section is § 41–730, which provided at the time of this case:

> "A. All purchases of supplies, materials, equipment, risk management services, insurance and contractual services made by the section of purchasing having an estimated cost in excess of one thousand dollars per transaction shall be based on sealed, competitive bids. The invitation for bids and specifications shall be issued in a sufficient time before the purchase is made, and in sufficient detail, to permit free competition. Copies of the invitation and specifications shall be supplied to and bids shall be solicited from the maximum number of qualified sources throughout the state consistent with the item to be purchased as determined by the assistant director for finance, but including all qualified suppli-

ers who prior to the issuance of the invitation notify the purchasing section in writing that they desire to bid on materials, supplies, equipment or contractual services contained in the invitation.

> B. Bids shall be opened publicly at the time and place stated in the invitation. Awards shall be made with reasonable promptness by giving written notice to the responsible bidder whose bid conforms to the invitation and will be the most advantageous to the state with respect to price, conformity to the specification and other factors. However, all bids may be rejected if the purchasing section determines that rejection is in the public interest.

> C. *This section shall apply to all purchases of supplies, materials, equipment, insurance and contractual services made by the section of purchasing for any budget unit notwithstanding any provision of law to the contrary* ...." (Emphasis added)

 The controlling competitive bidding section sets forth the procedure involved. Clearly A.R.S. § 38–503(C) requiring public competitive bidding was not followed. The city passed a resolution voiding the contract on the evening of April 21, 1983, the first day of trial. Because a substantial portion of the contract had already been performed by both parties, this action was treated by the city as voiding the balance of the original contract and the contract as modified by Maucher and the city manager. The city took no action and plans no action to recover funds expended on the project. Maucher argues that the city should not be permitted to reap the fruits of the contract and then void it. However, the conflict of interest statute was passed to protect the public and risks are involved when the parties ignore the clearly stated public policy. One of those risks is that the contract might be voided.

It is clear in Arizona that "... the letting of contracts for public business should be above suspicion or favoritism." *Brown v. City of Phoenix*, 77 Ariz. 368 at 377, 272

P.2d 358 at 367 (1954). Self-dealing by those charged with the performance of public duty is circumscribed by the admonition that one cannot serve two masters with conflicting interests. In *Williams v. State*, 83 Ariz. 34, 315 P.2d 981 (1957), the court stated:

> "In order that he [the public officer in question, being the land commissioner] act only for and on behalf of the state's interest, it is imperative that he have no personal interest that might clash or conflict with that of the state.... Public policy requires that personal interests not exist as a possible factor influencing a public official in the performance of his duties. (citations omitted)." 83 Ariz. at 36–37, 315 P.2d at 982–83.

Also see *State v. Bohannan*, 101 Ariz. 520, 421 P.2d 877 (1967) and *Yetman v. Naumann*, 16 Ariz.App. 314, 492 P.2d 1252 (1972).

█ Although the result is harsh, it is nevertheless authorized and appropriate when the public interest in avoiding such agreements is taken into account. Neither will quantum meruit be permitted to circumvent the conflict of interest statute. Cf. *Dynamic Industries Company v. City of Long Beach*, 159 Cal.App.2d 294, 323 P.2d 768 (1958) (holding that a city may not be held liable in quasi-contract, when a charter provision has not been complied with). As has been pertinently observed with reference to violations of a substantive statute by a municipality,

> "... the majority rule is to deny restitution rather than grant it. Where, for example, a statute forbids contracting for goods or services without publicly advertized, competitive bidding, and the city nevertheless lets a contract for, say, street repair, without such bidding, the contractor not only is denied recovery of his contract expectancy, but is also denied the reasonable value of his services. This leaves the city with unearned and undeserved benefits. The policy against unjust enrichment would call for restitution here. However, the policy of the statute would be substantially undermined if restitution were allowed. This is true in the illustration given, even though the particular contractor and the particular city officials were acting with complete honesty and good faith. The statutes of this sort are aimed at preventing city officials from letting contracts at inflated prices in return for a share of the overcharges thus mulcted from the city treasury. If contractors and corrupt officials knew that they could, even if caught in an illegal contract, always recover at least restitution, the odds would be increased very considerably in their favor and they would very likely be increasingly willing to attempt unbidded contracts. Once it is decided that, on the facts of the particular case and in the light of the particular statute, the statutory policy would be undermined by even a restitutionary recovery, it is clear that the policy against unjust enrichment must bow to the policy established by the legislature. Thus, with the dissent of a few, most courts refuse to permit even a restitutionary recovery in such cases." D. Dobbs, Remedies, § 13.-4, p. 989 (1973).

The judgment is vacated and it is ordered that judgment be entered for appellant. Appellant is awarded costs and attorney's fees in connection with the prosecution of this appeal and for the defense of the superior court action.

BIRDSALL, C.J., and HOWARD, J., concur.